**FRUCO CONST. CO. v. McCLELLAND et al.**

No. 14286.

United States Court of Appeals
Eighth Circuit.

Nov. 8, 1951.

Rehearing Denied Dec. 3, 1951.

Jacob M. Lashly, St. Louis, Mo. (Arthur V. Lashly, Edmond A. B. Garesche, David H. McGhee, and Lashly, Lashly & Miller, St. Louis, Mo., were with him on the brief), for appellant.

Arnot L. Sheppard, St. Louis, Mo. (Dennis E. Woodside, St. Louis, Mo., was with him on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

In December, 1940, the appellant, Fruco Construction Company, entered into a cost-plus-fixed-fee contract with the United States to construct the numerous buildings, roadways, sidewalks and other structures at St. Louis, Missouri, known as the St. Louis Ordnance Plant or the Small Arms Ammunition Plant.

The appellees, plaintiffs in the trial court, who were employed at the plant as construction guards, brought this action against the appellant under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201 to 219, to recover for the period between October 13, 1941, and October 15, 1942, overtime com-

pensation, liquidated damages, a reasonable attorneys' fee, interest and costs. The appellant denied liability.

The court appointed a special master who heard the testimony, made findings of fact and conclusions of law favorable to the appellees, to which appellant filed exceptions. The exceptions were overruled and the court adopted the findings of fact and conclusions of law of the special master and entered judgment against the appellant for $60,247.35 as overtime compensation, an equal amount as liquidated damages, and $11,250 attorneys' fees and costs, a total of $131,744.70.

The appellant contends here, as it did in the trial court, that the special master and the court erred in finding and holding:

1. That the appellant was the employer of the appellees in whose favor judgment was rendered, in that within the definition of the term employer as defined in the Act the United States government was their employer;

2. That the appellees were engaged in activities necessary to the production of goods for commerce within the meaning of the Act;

3. That appellant is not exempt from liability for overtime compensation under § 9 of the Portal to Portal Act because omission to pay overtime compensation was not in good faith;

4. That appellant is not exempt from liability for liquidated damages under § 11 of the Portal to Portal Act of 1947, 29 U.S.C.A. § 260;

5. That the claims of certain designated groups of the appellees were not barred by the Missouri five-year statute of limitations.

The material evidentiary facts and the applicable statutes are not in dispute. Only inferential facts and applicability of the statutes are involved.

We shall first consider appellant's contention that it was not the employer of the appellees but that they were employees of the government.

Section 3 of the Fair Labor Standards Act, 52 Stat. 1060, 29 U.S.C.A. § 203, provides: "As used in sections 201–219 of this title—* * *

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States * * *

"(e) 'Employee' includes any individual employed by an employer. * * *

"(g) 'Employ' includes to suffer or permit to work."

The facts relevant to this issue in brief are as follows:

The appellant's contract with the government was dated December 11, 1940, and construction of the plant was commenced in January, 1941. At that time Colonel David L. Van Syckle was assigned by a special order of the War Department to command the St. Louis Ordnance Plant. He was charged with disciplinary protection of the plant site. Protection of the construction area was delegated by the commanding officer, by orders of the War Department in Washington, to the Constructing Quartermaster, and later to the Area Engineer. After December 15, 1941, all construction activities of the army were by law placed under the jurisdiction of the Corps of Engineers. Thereafter the chain of command was from the Chief of Engineers in Washington, D. C., to the Division Engineer; from the Division Engineer to the District Engineer; from the District Engineer to the Area Engineer, and from him to the Contractor.

Soon after the appellant commenced performance of the contract it became apparent that guards were needed. Early, therefore, in 1941, at the instance of the Constructing Quartermaster, the appellant entered into a subcontract with the Burns Detective Agency, by the terms of which the Burns Agency employed and furnished guards at the plant site in consideration for which the appellant paid the Burns Agency at the rate of 75 cents per hour for each guard furnished.

Shortly before October 12, 1941, the arrangement with the Burns Agency was terminated as of October 13, 1941, by order of the Constructing Quartermaster. Thereafter the Constructing Quartermaster employed and supervised the guards. The appellant had nothing to do with employing,

244

supervising, directing or discharging them. When a guard was employed the appellant was notified and instructed to place his name upon appellant's payroll. In a letter to the appellant from the Constructing Quartermaster's office dated October 14, 1941, interpreting the official instructions appellant was advised that "the guard is of necessity a part of the CQM [Constructing Quartermaster] force of the payroll of the cpff [cost-plus-fixed-fee] contractor and the control of the guard, excepting for pay, is vested in the constructing quartermaster, the guard officer being delegated authority to issue orders and instructions to the guard." After this arrangement was made the constructing quartermaster or his successor, supplied the appellant each week with a list of guards on duty during the week with the number of hours each had been on duty, and the appellant paid them the wages to which they were entitled.

In October, 1942, a further change was made in the method of handling the guards by which they became civil service employees of the United States, and they were no longer carried on the appellant's payroll.

■ Under the undisputed facts in this case we are convinced that the special master and the court erred as a matter of law in holding that the construction guards, appellees here, were employees of the appellant contractor and not of the government within the meaning of the Fair Labor Standards Act, supra. In the case of Walling v. Sanders, 6 Cir., 136 F.2d 78, 81, the court say: "The usual test by which, in common experience, men determine the employer, is to ascertain who has authority on his own account to 'hire and fire.'"

■ In 56 C.J.S., Master and Servant, it is said, in § 1, "The relation of master and servant is that which arises out of an express or implied contract of employment between a master or employer on the one hand and a servant or employee on the other"; and in § 2, "The essential characteristic of the master and servant relation is the retention by the employer of the right to direct and control the manner in which the work shall be performed, * * *." See, also, 35 Am.Jur., Master and Servant, § 2.

■ In Bartels v. Birmingham, Collector, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947, the Supreme Court say: "Obviously control is characteristically associated with the employer-employee relationship but in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service." In this instance the service rendered by the guards was the protection of government property.

■ Applying these tests to the facts here, the construction guards were employees of the government within the meaning of the Fair Labor Standards Act. See, also, Lewis v. Virginia Engineering Co., Inc., D.C., 80 F.Supp. 886. When the contract with the Burns Agency was cancelled in 1941, the Constructing Quartermaster's office assumed complete charge of the construction guards. All the guards made application for employment on forms headed: "War Department, Office of the Constructing Quartermaster, Application for Employment As a Member of the Guard." They were employed by the Quartermaster and controlled by the government officers in every particular. The appellant could neither direct, nor hire, nor fire them.

On this point the case differs from the situation presented in the case of Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 758, 94 L.Ed. 1017. In the Powell case it was admitted that the petitioners employed in the safety department of the ammunition factory were employees of the Cartridge Company. In that case the evidence showed that they were to be hired, assigned, directed, supervised, paid and discharged by the company. There the contract between the government and the company provided that all persons engaged in the work "shall be subject to the control and constitute employees of the Contractor." The opposite of all these conditions existed in the present case.

But it is said the arrangement by which the appellant paid the guards compels the conclusion that they were employees of the appellant. Here the Quartermaster's office made out a time card for each guard and delivered it to the appellant. The appellant

paid the guard and was reimbursed by the government. All the orders and directives made it clear that the guards were employees of the government and not of the appellant. See Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 800, 69 S.Ct. 1317, 93 L. Ed. 1692. Further, the evidence discloses that the arrangement for payment of the guards through the office of the appellant was made for the convenience of the government. Had such an arrangement for payment of the wages of the guards been made with a bank it could not be said that the bank was the employer.

The Special Master, in his opinion adopted by the court, says: "* * * the first pleading of Defendant, its Answer to the First Amended Complaint, admitted the allegation of that Complaint that Plaintiffs were employed by Defendant"; and the holding is based in part upon that statement. The answer referred to is not in the printed record and the clause referred to was not introduced in evidence by appellees. The defendant's amended answer to the second amended complaint specifically alleges "That none of the plaintiffs was an employee of this defendant during any of the time stated in plaintiffs' said Second Amended Complaint; * * * that all of the plaintiffs were at all of said times employees of the United States Government and subject to its specific control; * *."

In giving consideration to such "admission" the Special Master and the court erred. The controlling rule in such a case is tersely stated in 20. Am.Jur., Evidence, § 631, page 534, as follows: "An abandoned or superseded pleading is out of the case, so far as admissions by rule of pleading are concerned, and therefore, admissions therein may be taken advantage of, according to the majority rule, only by introducing the pleading, or so much of it as contains the admission, in evidence." And see, Wahl v. Cunningham, 332 Mo. 21, 56 S.W.2d 1052, 1059. See, also, 31 C.J.S. Evidence, § 304, p. 1079, et seq.; Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 2 Cir., 32 F.2d 195, certiorari denied, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629; Basconi v. Delli, Ohio App., 100 N.E.2d 866.

The Special Master based his finding that appellees were employees of the appellant in part upon the fact that the checks issued in payment of their wages showed that social security taxes were deducted. This fact is not conclusive, however, Brown v. Minngas Co., D.C.Minn., 51 F.Supp. 363, 368, and in view of the evidence heretofore referred to does not change the result. By every legal test the evidence conclusively demonstrates that the construction guards were the employees of the government.

We next consider the validity of the finding that the appellee guards were engaged in activities necessary to the production of goods for commerce within the meaning of the Act.

This finding is based upon these undisputed facts. Prior to the cancellation on October 12, 1941, of the contract with the Burns Agency to furnish guards construction work on two of the buildings at the plant was so nearly complete that they were used for manufacturing purposes. The government entered into a contract with the McQuay-Norris Company to operate the facilities in one of these buildings for the production of cores for small arm shells. Another contract was entered into with the United States Cartridge Company to operate the facilities in the other building for producing .30 and .50 caliber shells. Many buildings were constructed by the appellant under its contract, and as a building was completed an operating company occupied it for the production of arms or ammunition for the government. In every instance operating companies had their own guards. The appellee construction guards could not enter the premises under the jurisdiction of the operating guards without a permit. However, they continued as construction guards until the construction work was completed.

The Special Master concluded "That the duties of the Plaintiffs [appellees] as guards was to guard and protect the entire plant area or site so that they were engaged in activities necessary throughout this period to the production that was in progress and being carried forward by * * * the operating companies."

It is well settled that laborers engaged in construction work solely are not engaged in the "production of goods for commerce." Reed v. Murphey, 5 Cir., 168 F.2d 257, 261; and see same case, 335 U.S. 865, 69 S.Ct. 105, 93 L.Ed. 410; Noonan v. Fruco Const. Co., 8 Cir., 140 F.2d 633; Cooper v. Rust Engineering Co., 6 Cir., 181 F.2d 107, certiorari denied, 340 U.S. 879, 71 S.Ct. 116, 95 L.Ed. 639; Kirschbaum Co. v. Walling, 316 U.S. 517, 525, 62 S.Ct. 1116, 86 L.Ed. 1638.

In support of his conclusion, supra, the Special Master relied upon Walton v. Southern Package Corporation, 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298, and Roland Electrical Company v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. Walton was a night watchman at a plant producing goods for commerce and his duties were held to be necessary to the production of goods by the plant. The employees of the Electrical Company were engaged in repairing and rebuilding electrical motors and in installing electrical wiring for the company's customers who were producing goods for interstate commerce. They were held to be engaged in an activity necessary to the production of goods for commerce and entitled to the benefits of the Act.

The court erred in adopting the Special Master's conclusion on this point. Here the duties of the appellees had only the most tenuous relation to the production of munitions. Their duties as construction guards were purely incidental to the protection of the manufacturing in progress. The operating guards were the only guards whose duties related directly to the production of munitions in the buildings constructed by the appellant. The character of any employee's work within the meaning of the Act is determined by what the laborer does and not by some remote and contingent incidental effect of it. See the authorities cited supra, and Simmons v. Friday, 8 Cir., 190 F.2d 849, 851; 42 C.J.S., Incidental, p. 520. To determine whether or not a laborer is engaged in the production of goods for commerce, it must be found that a *substantial* part of his labor is necessary to the production of such goods, not merely an incidental part. Walling v. Goldblatt Bros., Inc., 7 Cir., 128 F.2d 778, 784, certiorari denied 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130.

In its Amended Answer to the Second Amended Complaint the appellant alleged (1) as a complete defense that in good faith and in reliance upon administrative regulations, orders and instructions issued to defendant by an agent or agencies of the United States Government it failed to pay plaintiffs the so-called premium overtime alleged to be due them and that this action is therefore barred by Part IV, Section 9 of the Portal-to-Portal Act of 1947, 29 U.S.C. A. § 258 [1]; and (2) that in not paying the plaintiffs the amounts claimed the defendant was acting in good faith and that it had reasonable grounds for believing that its omissions were not violations of the Fair Labor Standards Act of 1938, as amended by Section 11 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 260, and that, therefore, plaintiffs are not entitled to liquidated damages in this action.

The nature of the appellant's contract with the government for the construction of the buildings at the plant in St. Louis.

---

1. Section 9 of the Portal-to-Portal Act, 29 U.S.C.A. § 258, is as follows: "In any action or proceeding commenced prior to or on or after May 14, 1947 based on any act or omission prior to May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect."

and the supervision of the work by officers of the War Department are recited above. It is shown that the only function of the appellant in connection with the guards was to pay them their weekly wages when the time card for each guard was furnished the appellant by the commanding officer. His office informed the appellant that the guards were not subject to the Fair Labor Standards Act and that they were not entitled to overtime compensation at 150 per cent of their regular wages; that they were employed by the week; and that the appellant would not be reimbursed for overtime payments. The evidence is undisputed that it was in reliance upon these directives, letters and communications from the War Department that overtime compensation was not paid.

The Special Master, whose findings were adopted by the court, concluded that under the evidence the appellant was not as a matter of law "within the provisions of Section 9 of the Portal to Portal Act of 1947" nor of Section 11 thereof, "and is not relieved of liability by reason thereof."

The basis for this finding and holding is explained by the Special Master in his opinion accompanying his findings as follows: "While these writings were issued by responsible heads or divisions of the Army which would be sufficient to constitute agency action, they cannot help Defendant here for two reasons. First, as pointed out above, the manual and circular letters related to the handling of contracts to which the Army or one of its divisions was a party and so could not constitute administrative action of an Agency as contemplated by Section 9 of the Portal to Portal Act. Secondly, they show that they did not purport to cover the class of employees in which Plaintiffs belong, and in addition show that they related to other Acts of Congress, not the Wage and Hour provisions of the Fair Labor Standards Act, by the use of 'manual' and 'non-manual' classifications, and in other instances by use of 'laborers and mechanics' as distinguished from 'administrative and supervisory' employees."

His first reason, it will be observed, is based upon his conclusion that the Army or one of its divisions was a party to the contract with appellant and that its directions "could not constitute administrative action of any Agency as contemplated by Section 9 of the Portal to Portal Act." In reaching this conclusion the Special Master relied upon the decision of the District Court of Minnesota in Jackson v. Northwest Airlines, 76 F.Supp. 121, 129. That decision, however, was reversed by this court in Northwest Airlines, Inc., v. Jackson, 8 Cir., 185 F.2d 74, 82, certiorari denied 72 S.Ct. 26. The point was ruled to the contrary also in Lassiter v. Guy F. Atkinson Co., 9 Cir., 176 F.2d 984, 991, wherein it is said: "It cannot well be urged that the War Department and its subdivisions issuing the various communications, the Corps of Engineers, the Contracting Officers and the War Department Wage Administration Agency, were not 'agencies of the United States' within the meaning of the Portal-to-Portal Act. The authority to act with the sanction of government behind it determines whether or not a governmental agency exists." And see Kam Koon Wan v. Black, D.C., 75 F.Supp. 553, affirmed 9 Cir., 188 F.2d 558; Posadas v. National City Bank, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351; Standard Oil Co. of California v. Johnson, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611; Byrne v. Metcalfe Constr. Co., D.C.Neb., 99 F.Supp. 635; Administrative Procedure Act, 5 U.S.C.A. § 1001(a).

Clearly the special master and the court erred in holding that the action against the appellant was not barred by § 9 of the Portal to Portal Act. The orders, rulings and directions of the War Department were directed to the appellant, and it complied with those rulings as it was required to do under the cost-plus-fixed-fee contract between it and the government.

In the view we take of the case there is no need to discuss the ruling on the application of § 11 of the Portal to Portal Act.

We find it unnecessary to discuss the Missouri Statute of Limitations since the case must be and is reversed for the foregoing reasons and is remanded to the district court with instructions to enter judgment dismissing appellees' suit on the merits and for costs.

Reversed and remanded.