828 F.2d 1245
 9 Fed.R.Serv.3d 107
 SUNKYONG INTERNATIONAL, INC., Appellee,
v.
ANDERSON LAND & LIVESTOCK COMPANY, a/k/a Anderson Land and
Livestock International and Anderson Land and Livestock,
Stanley E. Anderson; Don Rose, Don Rose d/b/a Sac River
Ranch, Don Rose d/b/a Rose Cattle Company; Elizabeth Daley
Anderson; Stanley E. Anderson and Elizabeth Daley Anderson,
alleged statutory trustees of Anderson Land and Livestock
Company, Inc., Appellants.
 No. 86-1924.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1987.
Decided Sept. 4, 1987.
Rehearing Denied Oct. 29, 1987.
 
 John G. Newberry, Springfield, Mo., for appellants.
 Richard I. Fine, Los Angeles, Cal., for appellee.
 Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Stanley and Elizabeth Anderson appeal from a jury verdict in favor of Sunkyong International's claim against them for breach of contract. The dispute between Sunkyong and the Andersons arose from an agreement to deliver a number of cattle to Sunkyong for shipment to South Korea. The Andersons contend that the district court[1] erred in 1) submitting the question of Elizabeth Anderson's liability on the contract to the jury because Sunkyong did not show her to be a partner or joint venturer with Stanley Anderson; 2) submitting Sunkyong's contract claim to the jury because the contract was conditioned on an "illusory provision," acceptance of the subject cattle by inspectors for a third party; 3) directing a verdict against the Andersons as statutory trustees of Anderson Land & Livestock Co., a forfeited corporation, because the corporation had never been properly served with process and was not before the district court; and 4) admitting certain evidence. We affirm the judgment of the district court in all respects.
 
 
 2
 Stanley Anderson is a livestock broker, dealing primarily in cattle. He testified that he transacts business under various names including Anderson Land & Livestock, Anderson Land & Livestock International, and Anderson Land & Livestock Co., Inc. The latter name--Anderson Land & Livestock Co., Inc.--was also used by a Missouri corporation Stanley Anderson organized in 1980. Anderson Land & Livestock Co., Inc. was owned by Stanley Anderson, and its directors and officers were Stanley and Elizabeth Anderson. It forfeited its corporate charter in early 1982.
 
 
 3
 In the summer of 1982, Sunkyong accepted a bid to provide 4,400 Charolais heifers to the National Livestock Co-Operative Federation of Seoul, South Korea (NLCF). Sunkyong entered an agreement on November 23, 1982, with Stanley Anderson to purchase 2,200 Charolais heifers from him for resale to the NLCF. This agreement was signed by Anderson and contains the statement "Mr. Stanley Anderson, personally and as president of Anderson Livestocks [sic] Co. guarantees against all risks included first payment for the owner of stock farm which might occur before loading of cattles." Pltf's. Exh. 47. Representatives of Sunkyong testified at trial that the parties to the agreement understood that the cattle were to conform with the NLCF's invitation to bid, including the requirement that the cattle pass an inspection by agents of the NLCF prior to shipment to Korea.
 
 
 4
 Under the terms of their agreement, Sunkyong advanced $700,160 to Anderson for the purchase of 2,800 head of cattle. By the late summer of 1983, Anderson had supplied some 1,093 head of cattle to Sunkyong, worth, according to Sunkyong's witnesses, $393,480. The NLCF inspectors, however, rejected the remaining cattle Anderson proposed to sell to Sunkyong. Sunkyong's witnesses testified that these cattle were weak, sick, underweight, and afflicted with pinkeye. Anderson's witnesses testified that these cattle were healthy and met the export specifications imposed by the United States Department of Agriculture. One witness testified that the inspectors rejected the cattle because Anderson's agent refused to bribe them at a rate of $5 per head. The rejected cattle were eventually sold elsewhere.
 
 
 5
 In March 1984, Sunkyong brought suit against Stanley Anderson, his agent cattle grower, and Anderson Land & Livestock Co., Inc. for breach of contract, fraud, and money had and received. Anderson counterclaimed against Sunkyong for wrongful refusal to accept the tendered cattle. Sunkyong subsequently amended its complaint to join Elizabeth Anderson individually as a defendant and later again amended the caption of the complaint, pursuant to court order, to reflect that Stanley and Elizabeth Anderson were being sued as statutory trustees of the forfeited Anderson Land & Livestock Co., Inc.
 
 
 6
 After a three-day trial, the jury returned a verdict in favor of Sunkyong on its contract claim for $422,520. The jury further found against the Andersons on their counterclaim. The district court also directed a verdict in favor of Sunkyong on its claim against the Andersons as statutory trustees. At the time it entered the directed verdict, the court stated that it was doing so based on its earlier order deeming certain requests for admission directed to the corporation admitted for failure to respond. The Andersons moved for vacation of the order directing the verdict, or for a new trial, on the ground that the corporation was never served with process nor was properly before the district court and, thus, could not have "admitted" anything. Elizabeth Anderson also moved for judgment notwithstanding the verdict or for a new trial on the ground that Sunkyong had failed to establish that she was a partner or joint venturer with her husband. The Andersons jointly moved for judgment n.o.v. contending that the contract claim should not have gone to the jury because the agreement with Sunkyong was conditioned on an "illusory provision," the acceptance of the cattle by the NLCF inspectors. The district court refused to grant any of the Andersons' post-trial motions. This appeal, raising the same issues, followed.
 
 I.
 
 7
 The Andersons first contend that Sunkyong failed to make a submissible case against Elizabeth Anderson and that the district court erred in submitting the contract claim against her to the jury. They argue that Mrs. Anderson's connection with Anderson Land & Livestock was too tenuous to meet the requirements of Missouri partnership law and impose joint liability on her with her husband. Thus, they conclude that the district court should have granted Mrs. Anderson's motion for a directed verdict or her motion for judgment notwithstanding the verdict.
 
 
 8
 In evaluating the district court's disposition of Mrs. Anderson's motions, we are mindful that a directed verdict or judgment n.o.v. properly may be entered only where all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. Brown v. Syntex Labs., Inc., 755 F.2d 668, 671 (8th Cir.1985). We consider the record in the light most favorable to Sunkyong, which prevailed before the jury, we assume that all conflicts in the evidence were resolved by the jury in Sunkyong's favor, and we assume as proved all facts which Sunkyong's evidence tended to prove. Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir.1985); Dace v. ACF Indus., 722 F.2d 374, 375-76 (8th Cir.1983); Cleverly v. Western Elec. Co., 594 F.2d 638, 641 (8th Cir.1979). So viewed, we conclude that the evidence in the record does not point all one way and that the district court did not err in refusing to grant Mrs. Anderson's motions.
 
 
 9
 The Uniform Partnership Law, adopted in Missouri, defines partnership as "an association of two or more persons to carry on as coowners a business for profit." Mo.Rev.Stat. Sec. 358.060.1 (1978). The Partnership Law sets forth a number of rules to be used in determining the existence of a partnership, including, inter alia:
 
 
 10
 (2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such coowners do or do not share any profits made by the use of the property;
 
 
 11
 (3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;
 
 
 12
 (4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 (b) As wages of an employee * * *.
 
 
 16
 Id. Sec. 358.070 (1978).
 
 
 17
 The Missouri courts have developed additional principles to aid in this determination. The partners, of course, must have entered into an agreement, but this may be implied. Brotherton v. Kissinger, 550 S.W.2d 904, 907 (Mo.Ct.App.1977). The intention of the parties is the primary criterion in determining whether a partnership exists. Grissum v. Reesman, 505 S.W.2d 81, 85 (Mo.1974). Merely "helping out" in a business is not in itself sufficient to prove the existence of a partnership. Brotherton, 550 S.W.2d at 907. This is particularly true in "husband and wife" cases, because the "very nature of the relationship of the parties tends to submerge adversity of individual interests." Shawneetown Feed & Seed Co. v. Ford, 468 S.W.2d 54, 56 (Mo.Ct.App.1971); see Fish v. Fish, 307 S.W.2d 46, 52 (Mo.Ct.App.1957) ("acts and circumstances between spouses may not have the same significance * * * as the same acts and circumstances between strangers might have"). The sharing of profits raises a presumption that a partnership exists, Grissum, 505 S.W.2d at 85; cf. Mo.Rev.Stat. Sec. 358.070(4) (receipt of share of profits prima facie evidence of partnership), and this presumption becomes conclusive when there are rights of management in each partner. Grissum, 505 S.W.2d at 85; Brotherton, 550 S.W.2d at 907. The Missouri courts also fail to recognize any essential difference between the tests for determining the existence of a partnership and a joint venture. Grissum, 505 S.W.2d at 86.
 
 
 18
 The Andersons cite us to the Missouri statute and these principles and argue that the evidence showed that Mrs. Anderson merely "helped out" her husband with Anderson Land & Livestock. The record, however, includes the following evidence of Mrs. Anderson's involvement in the cattle business: 1) Mrs. Anderson had the authority to write checks on all business accounts and did write at least one check on a business account for her personal use; 2) Mrs. Anderson traveled with her husband on business trips, including trips relating to the transaction with Sunkyong; 3) Mrs. Anderson discussed the transaction with Sunkyong employees and characterized herself to Sunkyong employees as Anderson Land & Livestock's secretary;[2] 4) Mrs. Anderson benefited from the profits of Anderson Land & Livestock, but not in the form of wages; 5) a Dun & Bradstreet report stated that Mrs. Anderson assisted in the management of Anderson Land & Livestock. Additionally, although perhaps less significantly in light of the various statutory and judicial rules for testing a partnership in Missouri, there was evidence that Mr. Anderson paid for home and personal items through his business accounts and that he failed to segregate his business costs on his income tax returns.[3]
 
 
 19
 We believe that this evidence was sufficient to submit the issue of Elizabeth Anderson's liability to the jury. Of particular importance is the evidence that Mrs. Anderson assisted in the management or operation of Anderson Land & Livestock. This coupled with testimony tending to prove that she shared in the business profits is, we think, enough to create a jury issue as to whether Mrs. Anderson was a partner in Anderson Land & Livestock or was merely "helping out" her husband in his business.[4] Therefore, we conclude that the district court did not err in overruling Mrs. Anderson's motions for a directed verdict and for judgment n.o.v.
 
 II.
 
 20
 The Andersons next contend that the district court erred in submitting Sunkyong's contract claim to the jury because their agreement was conditioned on an "illusory provision," the NLCF inspectors' approval of the cattle for shipment to Korea. They argue that this provision makes the contract unenforceable because Sunkyong had an "automatic out." Appellants' Brief at 11.
 
 
 21
 The Andersons' argument, we believe, misstates the terms of the agreement with Sunkyong. There is testimony in the record that all the parties understood that the agreement was subject to the terms of the original invitation to bid submitted by the NLCF and accepted by Sunkyong. The terms of the invitation to bid provided that NLCF agents were to inspect the cattle to determine their acceptability for export to South Korea. Thus, Anderson Land & Livestock agreed to furnish Sunkyong with cattle acceptable to the NLCF inspectors, and Sunkyong agreed to furnish the NLCF with cattle acceptable to the NLCF inspectors. Sunkyong and Anderson Land & Livestock were both bound to perform under the terms of the agreement. Sunkyong did not, as suggested by the Andersons, retain and exercise the right to unilaterally reject the cattle and not perform.
 
 
 22
 Missouri recognizes that the parties to a contract may agree to condition performance on the determination of a question or act by a third party. Twin River Constr. Co. v. Public Water Dist. No. 6, 653 S.W.2d 682, 693 (Mo.Ct.App.1983); Juengel Constr. Co. v. Mt. Etna, Inc., 622 S.W.2d 510, 514 (Mo.Ct.App.1981). "That determination is binding so long as the decision of the third party is not arbitrary, capricious, or in bad faith." Twin River Constr. Co., 653 S.W.2d at 693; see Fullington v. Ozark Poultry Supply Co., 327 Mo. 1167, 39 S.W.2d 780, 782-83 (1931). The Andersons do not now contend that the decision to reject the cattle was exercised in bad faith, although at trial one witness testified that the NLCF inspectors refused to accept the cattle because the cattle grower would not bribe them at a rate of $5 per head. In any event, there was also evidence that the rejected cattle were underweight, weak, sick, and afflicted with pinkeye. We are satisfied both that the district court did not err in submitting the question of breach to the jury and that there was evidence from which the jury could conclude that Anderson Land & Livestock failed to meet a condition of the contract.
 
 III.
 
 23
 The Andersons next contend that the district court erred in directing a verdict against them as statutory trustees of Anderson Land & Livestock Co., Inc. on Sunkyong's breach of contract claim. The court directed the verdict based on a series of requests for admissions submitted to Anderson Land & Livestock Co., Inc., to which the corporation did not respond. Earlier, the court had ordered that the admissions be deemed admitted. The Andersons argue that since the corporation was defunct, and they had not been properly served as statutory trustees, the district court had no jurisdiction over them and could not deem the admissions admitted.
 
 
 24
 Missouri Revised Statutes Sec. 351.525 provides that upon forfeiture of a corporation's charter, "the directors and officers in office * * * shall be the trustees of the corporation, who * * * may be sued as such." Mo.Ann.Stat. Sec. 351.525(4) (Vernon Supp.1987). Stanley and Elizabeth Anderson were the directors and officers of Anderson Land & Livestock Co., Inc. at the time it forfeited its corporate charter in early 1982. Thus, there is no question that Sunkyong could properly sue the Andersons in their capacity as statutory trustees. Sunkyong's first amended complaint, filed July 3, 1985, alleges that the Andersons are trustees of the forfeited corporation; on January 13, 1986, Sunkyong obtained leave of court to amend the caption of the amended complaint to reflect the fact that the Andersons were being sued in both their individual capacities and as trustees. By the time the district court directed the verdict, therefore, the court had jurisdiction over the Andersons in their capacity as statutory trustees.
 
 
 25
 We are still faced, however, with the question of whether the district court could properly rely on Anderson Land & Livestock's deemed admissions in granting Sunkyong's motion for a directed verdict. Sunkyong's requests for admissions were submitted to both Stanley Anderson and Anderson Land & Livestock on February 4, 1985. Stanley Anderson responded with a list of general objections to the requests directed to him personally; no response was filed by or on behalf of Anderson Land & Livestock. On July 3, 1985, the district court entered an order overruling Stanley Anderson's objections in toto and deeming the requests directed to Anderson Land & Livestock admitted for failure to respond. The amended complaint alleging that the Andersons were statutory trustees of the defunct Anderson Land & Livestock was also filed on July 3,[5] and, as we have mentioned, the caption was not amended to reflect that the Andersons were sued in their capacity as trustees until January 13, 1986, six months after the entry of the district court order. The Andersons point to this chronology and argue that on July 3, 1985, the district court did not have jurisdiction over them in their capacity as statutory trustees, nor did it have jurisdiction over the defunct corporation.[6] Thus, neither they nor the corporation could properly be held to have admitted anything, through failure to respond to requests or otherwise. The July 3 order, they assert, is simply a nullity and cannot form a basis for the district court's direction of a verdict.
 
 
 26
 We believe that the concept of "relation back" may be used in this context to correct any defect in service of process or in the original pleadings directed to Anderson Land & Livestock Co., Inc., and to validate the district court's order. Federal Rule of Civil Procedure 15(c) provides that an amended pleading relates back to the date the original pleading was filed if the claim arose out of the "conduct, transaction, or occurrence set forth * * * in the original pleading," and, where the amendment changes a party against whom a claim is asserted, the party
 
 
 27
 (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
 
 
 28
 Rule 15(c)'s requirements are satisfied by the amendment substituting Mr. and Mrs. Anderson as statutory trustees for Anderson Land & Livestock Co., Inc. The Andersons had actual notice of the institution of the lawsuit both through service of the complaint on Mr. and Mrs. Anderson when sued individually and through service of the complaint on Mr. Anderson as president of Anderson Land & Livestock. Further evidence of this actual notice lies, of course, in the fact that the defunct corporation answered the complaint with a motion to dismiss. Moreover, the Andersons do not contend that they were prejudiced by the amendment's delay in their defense on the merits. An amendment which simply changes the capacity in which a person is sued, "without changing the ultimate liability sought to be imposed,"[7] Kerney v. Fort Griffin Fandangle Ass'n, 624 F.2d 717, 721 (5th Cir.1980), relates back to the date of filing the original complaint. Cf. Kirk v. Cronvich, 629 F.2d 404, 407 (5th Cir.1980) (substitution of sheriff in individual and official capacities for sheriff's department, which was not amenable to suit under local law, permissible under Fed.R.Civ.P. 15(c)).
 
 
 29
 We recognize that "relation back" is generally applied only with reference to statutes of limitation. See 6 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1496 (1971); Fed.R.Civ.P. 15(c) advisory committee notes on 1966 amendment ("[r]elation back is intimately connected with the policy of the statute of limitations"); see also Baldwin County Welcome Center v. Brown, 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) ("[t]he rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide"). Courts and scholarly commentators have on occasion approved the use of this concept in other contexts. See 3 J. Moore, Moore's Federal Cases p 15.15 (1985) (collecting cases). For example, in Fifty Associates v. Prudential Insurance Co., 446 F.2d 1187 (9th Cir.1970), the Ninth Circuit upheld the validity of certain proceedings before the district court that occurred after the initial filing of the defective complaint and prior to the filing of amendments designed to correct the defects by pleading diversity of citizenship. The court concluded that the amended complaint related back to the initial complaint and conferred "retroactive * * * jurisdiction," id. at 1193, on the district court, validating the earlier summary judgment proceedings. And in Fujii v. Dulles, 224 F.2d 906 (9th Cir.1955), the court permitted an amendment to relate back to the filing of the complaint in order to cure a statutory jurisdictional pleading defect. Id. at 906-07.
 
 
 30
 Most importantly for our present purposes, the Second Circuit has used this concept retroactively to validate service of process. See MacGowan v. Barber, 127 F.2d 458, 459-60 (2d Cir.1942) (amendment converted claim from one in personam to one in rem). Moreover, at least one court has held that the relation back of an amended pleading, filed in order to cure a defect in statutory subject-matter jurisdiction, validated court orders relating to interrogatories filed before the amendment. See Nedd v. Thomas, 47 F.R.D. 551, 553-54 (M.D.Pa.1969). The court in Nedd rejected the contention that the jurisdictional defect in the original complaint rendered all of the proceedings prior to amendment a "nullity." Id. at 554.
 
 
 31
 We likewise reject the Andersons' assertion that the July 3 order was a nullity. The amended complaint simply changed the capacity in which the Andersons were sued, it did not open them to the imposition of additional liability. They had actual notice of the lawsuit in their individual capacities as well as through service on them as officers of Anderson Land & Livestock. They also received copies of Sunkyong's requests for admissions in their individual capacities and as officers of the defunct corporation. We have no difficulty in concluding on these facts that the district court's July 3 order was validated through the relation back of the amended complaint and amended caption to the date of filing the original complaint. This relation back cured any defect in service of process, see MacGowan, 127 F.2d at 460, and in the district court's jurisdiction over the Andersons as trustees. See Fifty Associates, 446 F.2d at 1193. Thus, the July 3 order formed a proper basis for the district court's direction of a verdict against Mr. and Mrs. Anderson as statutory trustees of Anderson Land & Livestock Co., Inc.
 
 IV.
 
 32
 The Andersons' final contention is that the district court erred in two evidentiary rulings: 1) in admitting a copy of the Dun & Bradstreet report on Anderson Land & Livestock, containing statements made by Mr. Anderson; and 2) in admitting a number of checks drawn by the Andersons on the Anderson Land & Livestock corporate account. The Andersons allege generally that this evidence was irrelevant, and that they were surprised by this evidence because it was not disclosed in pre-trial discovery.
 
 
 33
 We conclude that the district court did not abuse its discretion, see United States v. White Horse, 807 F.2d 1426, 1432 (8th Cir.1986), in the challenged evidentiary rulings. The Dun & Bradstreet report, which Mr. Anderson testified was based exclusively on statements he made to Dun & Bradstreet, stated that Mrs. Anderson "assisted in the management" of Anderson Land & Livestock. Thus, the report is clearly relevant to the issue of Mrs. Anderson's liability as a partner or joint venturer. Nor can we accept the Andersons' contention that they were surprised by this report; it was the basis of a summary judgment motion to which the Andersons responded. As for the checks drawn on the Anderson Land & Livestock corporate account, they were relevant in that they tended to show that Mrs. Anderson had access to Anderson Land & Livestock's funds and that these funds were used by the Andersons for personal expenditures. The Andersons cannot successfully claim that they were surprised by these checks, since they wrote them.
 
 
 34
 Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri
 
 
 [2]
 Elizabeth Anderson was the secretary of Anderson Land & Livestock Company, Inc., the defunct Missouri corporation. She was also a director of the corporation. The record is unclear as to whether she owned any stock
 
 
 [3]
 The district court also noted, in denying Mrs. Anderson's motion for judgment n.o.v., that Mr. Anderson had admitted her involvement in the operation of Anderson Land & Livestock in his answer to Sunkyong's first amended complaint. These answers were admitted into evidence over the Anderson's objection and read to the jury. The Andersons now argue, without citation of authority, that the district court erred in admitting these statements because Mr. Anderson's answer had been amended to deny that Mrs. Anderson was involved in Anderson Land & Livestock
 A pleading abandoned or superseded through amendment no longer serves any function in the case, but may be introduced into evidence as the admission of a party. See Fruco Constr. Co. v. McClelland, 192 F.2d 241, 245 (8th Cir.1951), cert. denied, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952); Clodfelter v. Thuston, 637 F.Supp. 1034, 1039 (E.D.Mo.1986). Mr. Anderson's admission that his wife was involved in the operation of Anderson Land & Livestock was certainly relevant to the issue of her liability on the contract. We conclude, therefore, that this evidence was properly admitted and considered by the jury and the district court.
 
 
 [4]
 The Andersons contend that this case is "very similar" to Shawneetown Feed & Seed Co., 468 S.W.2d at 54. In Shawneetown Feed & Seed, the court concluded that a wife who worked "just to help out," id. at 55, her husband in his feed store was not his partner. There was no evidence that she shared in the store's profits, however, nor that she "assisted in the management" of the store, as we have before us in the instant case
 
 
 [5]
 In fact, from our examination of the court file in this case it appears that the amended complaint and the district court order were filed at roughly the same time, 10:30 a.m., on the same day
 
 
 [6]
 It is difficult to tell from the record who was served with process, when, and in what capacity. The district court has no personal jurisdiction over parties who are not served with process. Peterson v. Sheran, 635 F.2d 1335, 1337 (8th Cir.1980). At some point, Mr. and Mrs. Anderson were both served with process in their individual capacities. Also, the corporation was served through Mr. Anderson as president. The corporation raised the issue of insufficiency of service in its initial motion to dismiss. Although the Andersons have not directed us to a similar motion filed on one or both of their behalves as trustees, we are reluctant to conclude that they have waived this critical issue. This lawsuit was originally filed in California and then transferred to the Western District of Missouri. In the process of transferring all the documents from California to Missouri, it appears to us that some have been misplaced. We do not fault the clerk of the district court for these gaps. We are unwilling, however, to penalize the Andersons for not preserving the issue of insufficiency of service when they may in fact have preserved it and the record has now been lost. We therefore consider this issue on the merits
 
 
 [7]
 The Andersons are only liable as statutory trustees "to the extent of [the corporation's] property and effects that shall have come into their hands." Mo.Ann.Stat. Sec. 351.525(4)