FARMER'S UNION CENTRAL EX-
CHANGE, INC., a corporation,
Plaintiff,

v.

RELIANCE INSURANCE COMPANY, a
corporation, Defendant.

and

CONOCO, INC., a
corporation, Plaintiff,

v.

RELIANCE INSURANCE COMPANY, a
corporation, Defendant.

Civ. Nos. A1–83–79, A1–83–96.

United States District Court,
D. North Dakota, Southwestern Division.

Dec. 10, 1987.

Philip L. Bruner and Patrick J. O'Connor, Jr., of Hart & Bruner, Minneapolis, Minn., also James S. Hill, of Zuger & Bucklin, Bismarck, N.D., as local counsel, for defendant Reliance Ins. Co.

Daniel L. Hovland, of Fleck, Mather, Strutz & Mayer, Ltd., Bismarck, N.D., for plaintiff Farmer's Union Central Exchange.

Charles S. Miller, Jr., of Fleck, Mather, Strutz & Mayer, Ltd., Bismarck, N.D., for plaintiff Conoco, Inc.

## MEMORANDUM OF DECISION

MAGILL, Circuit Judge [*].

This is a consolidated action by two oil companies against a surety of an asphalt paving contractor. The underlying facts are clearly and thoroughly set forth in a prior memorandum and order of this court,[1] 626 F.Supp. 583 (D.N.D.1985), and are hereby adopted and incorporated by reference. Additional facts will be set forth only as necessary for the discussion.

Farmer's Union Central Exchange, Inc. (Cenex), and Conoco, Inc. (Conoco) (collectively plaintiffs) initially made the following three arguments before this court:

I. Plaintiffs contended they were entitled to payment by Reliance Insurance Company (Reliance) under the terms of various bond contracts, for asphaltic product supplied to its principal, Scherbenske Excavating, Inc. (Scherbenske), in connection with several highway construction projects for the State of North Dakota and a number of its political subdivisions (contract claims).

II. Plaintiffs contended they were entitled to damages for Reliance's alleged violation of North Dakota's Unfair Insurance Practices Act, N.D.C.C. ch. 26.1–04 *et seq.* (1987 Supp.) (Act violation claims).

III. Plaintiffs contended they were entitled to tort damages for Reliance's alleged failure to deal with them fairly and in good faith in the adjustment of their contract claims (common law tort claims).

Judge Van Sickle granted Reliance's motion for summary judgment and dismissed plaintiffs' contract claims as untimely filed under N.D.C.C. § 48–02–17. 626 F.Supp. at 590–91. Conoco moved for reconsideration of this order on August 4, 1987, and

[*] The Honorable Frank J. Magill, United States Circuit Judge, sitting by designation.

1. The Honorable Bruce Van Sickle, Senior United States District Judge for the District of North Dakota.

Cenex did likewise on October 21, 1987. This court denied both motions.

On November 6, 1987, this court dismissed with prejudice plaintiffs' Act violation claims, holding that N.D.C.C. ch. 26.1–04 did not afford a private cause of action. Accordingly, only plaintiffs' common law tort claims remained to be resolved at trial.

After hearing and considering all of the evidence adduced at trial, this court concludes that both Conoco and Cenex have failed to prove their tort claims by a preponderance of the evidence.

## I. PRIVATE RIGHT OF ACTION UNDER N.D.C.C. CH. 26.1–04.

■ In a diversity case this court's duty "is not to formulate the legal mind of the state, but merely to ascertain and apply it." *Stratioti v. Bick,* 704 F.2d 1052, 1054 (8th Cir.1983) (citations omitted). "Where nei-

ther the legislature nor the highest court in a state has addressed an issue, [this court] must determine what the highest state court would probably hold were it called upon to decide the issue." *Hazen v. Pasley,* 768 F.2d 226, 228 (8th Cir.1985). The North Dakota Supreme Court has expressly declined to determine whether N.D.C.C. ch. 26.1–04 affords a plaintiff a private right of action.[2] *Szarkowski v. Reliance Insurance Co.,* 404 N.W.2d 502, 504 (N.D. 1987). Therefore, this court must determine how the North Dakota Supreme Court would probably rule on this question.

The states that have considered this issue are split on whether their version of the Model Unfair Trade Practices Act, drafted by the National Association of Insurance Commissioners (NAIC), creates a private cause of action. The majority of states, however, hold that there is no private cause of action.[3] Thus this court be-

**2.** That statute provides in part:
A person may not engage in this state in any trade practice defined in this chapter as * * * an unfair or deceptive act or practice in the business of insurance.
N.D.C.C. § 26.1–04–02 (1987 Supp.).
The following are unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

 * * * * * *

9. Unfair claim settlement practices. Committing any of the following acts, if done without just cause and if performed with a frequency indicating a general business practice:
a. Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue.
b. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under insurance policies.
c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.
d. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear.
N.D.C.C. § 26.1–04–03(9) (1987 Supp.).

**3.** States allowing a private cause of action are: Arizona, *Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 647 P.2d 1127, *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982); California, *Royal Globe Insurance Co. v. Superior Ct.,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979); Connecticut, *Griswold v. Union Labor Life Insurance Co.,* 186 Conn.

507, 442 A.2d 920 (Conn.1982); Florida, *Jones v. Continental Insurance Co.,* 670 F.Supp. 937 (S.D. Fla.1987); Louisiana, *French Market Plaza Corp. v. Sequoia Insurance Co.,* 480 F.Supp. 821 (E.D. La.1979); Montana, *Klaudt v. Flink,* 202 Mont. 247, 658 P.2d 1065 (1983); and West Virginia, *Jenkins v. J.C. Penney Casualty Insurance Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981).

States denying a private cause of action are: Colorado, *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370 (Colo.App.1982), *aff'd,* 691 P.2d 1138 (Colo.1984); Illinois, *Scroggins v. Allstate Insurance Co.,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); Iowa, *Seeman v. Liberty Mutual Insurance Co.,* 322 N.W.2d 35 (Iowa 1982); Kansas, *Earth Scientists (Petro Services) Ltd. v. United States Fidelity and Guaranty Co.,* 619 F.Supp. 1465 (D.Kan.1985); Michigan, *Bell v. League Life Insurance Co.,* 149 Mich.App. 481, 387 N.W.2d 154 (Mich.App.1986); Minnesota, *Morris v. American Family Mutual Insurance Co.,* 386 N.W.2d 233 (Minn.1986); Missouri, *Tufts v. Madesco Investment Corp.,* 524 F.Supp. 484 (E.D.Mo.1981); New Jersey, *Retail Clerks Welfare Fund v. Continental Casualty Co.,* 71 N.J.Super. 221, 176 A.2d 524 (1961); New Mexico, *Patterson v. Globe American Casualty Co.,* 101 N.M. 541, 685 P.2d 396 (App.1984); Oregon, *Farris v. U.S. Fidelity and Guaranty Co.,* 284 Or. 453, 587 P.2d 1015 (1978); Pennsylvania, *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981); Texas, *Russell v. Hartford Casualty Insurance Co.,* 548 S.W.2d 737 (Tex.Civ.App.1977); Wisconsin, *Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis.2d 56, 307 N.W.2d 256 (1981); Vermont, *Wilder v. Aetna Life and Casualty Insurance Co.,* 140 Vt. 16, 433 A.2d 309 (1981);

lieves that North Dakota would not allow such a cause of action.[4] This conclusion is bolstered by the fact that states in North Dakota's geographic proximity deny a private cause of action.

In reaching the conclusion that North Dakota would not recognize such a cause of action, this court considered the following:

### A. Statutory Language.

The Model Act provides as follows:

No order of the Commissioner under this Act or order of a court to enforce the same shall in any way relieve or absolve any person affected by such order from any liability under any other laws of this state.

NAIC Model Unfair Trade Practices Act § 9(d) (1971) (amended 1984).

North Dakota has adopted virtually identical language into its act. *See* N.D.C.C. § 26.1-04-18 (1987 Supp.). States which have denied a private cause of action have relied on this language in their versions of the Model Act (i.e., that a person may be liable under *other* laws, notwithstanding the operation of this law) to conclude that no private right of action was intended. *See, e.g., Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis.2d 56, 307 N.W. 2d 256, 269 (1981); *Tufts v. Madesco Investment Corp.*, 524 F.Supp. 484, 486–87 (E.D.Mo.1981).

By contrast, in Montana, for example, a state which allows a private cause of action, the statute provides:

This section shall not be deemed to affect or prevent the imposition of any penalty provided *by this code or by other law* for violation of any other provision of this chapter, whether or not any such hearing is called or held or such desist order issued.

Section 33–18–1004(5), Montana Code Annotated (emphasis added).

Similarly, California's version of the Model Act states that civil actions will be allowed "under the laws of this state arising out of" the unfair or deceptive practices. Cal. Ins.Code § 790.09 (West 1979 Supp.). Thus, this court concludes that the difference in statutory language between the states that deny a private right and the states that allow a right is significant. Because North Dakota's statute closely tracks the Model Act and the statutes of those states which deny a private right of action, it is reasonable to conclude that North Dakota would align itself with those states.

### B. Drafters' Intent.

As discussed above, North Dakota's Act substantially tracks the Model Act. The 1980 NAIC Report states unequivocally that the Model Act creates no private cause of action. "In any event, the intent of the NAIC, as evidenced by the language of the Model [Act] and the NAIC Proceedings, and supplemented by this Report, was clearly not to create a new private right of action for trade practices which are prohibited by the Model Act." *Report of Director Robert Ratchford, Jr. of Ohio Regarding a Private Right of Action under Section 4(9) of the NAIC Model Unfair Trade Practices Act*, Vol. II NAIC Proc. 344, 350 (1980). Thus one may presume that in adopting the Model Act, in the absence of any evidence to the contrary, the North Dakota legislature intended to abide by the intent of the NAIC drafters.

### C. Statutory Construction.

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set out a four-prong test to decide whether a statute creates a private cause

Virginia, *A & E Supply Co., Inc. v. Nationwide Mutual Fire Insurance Co.*, 798 F.2d 669 (4th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987); and Washington, *Tank v. State Farm Fire and Casualty Co.*, 105 Wash.2d 381, 715 P.2d 1133 (1986).

**4.** In reviewing the entire record of the one North Dakota district court decision which

plaintiffs assert recognizes such a cause of action, it turns out that the court did not even address the issue, nor was it asserted by the plaintiff in that case. *See Weber v. Horace Mann Insurance Co.*, Civ. No. 13684 (S.C.D.N.D. May 27, 1982).

of action. Under the circumstances of this case, the test requires this court to ascertain: (1) whether the plaintiff is a member of the class for whose benefit the Act was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create or deny such a remedy; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and (4) whether the implication of a private cause of action would intrude upon the regulatory authority delegated to the commissioner of insurance.[5]

In *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35 (Iowa 1982), the Iowa Supreme Court applied the four-part test to its version of the Model Act, which contains language similar to North Dakota's statute. The court concluded: (1) That the plaintiff was a member of the class of persons for whose special benefit the statute was enacted, *id.* at 41; (2) that despite the scant legislative history, that the legislature implicitly intended the insurance commissioner's powers to be the exclusive means of enforcing the statute, *id.* at 42; (3) that to judicially imply a cause of action would override the inferred legislative intent, *id.* at 43; and (4) that a private cause of action would intrude upon the authority delegated to the state insurance commissioner, *id.* This court finds the *Seeman* analysis equally applicable here, and persuasive in determining that no private cause of action exists.

Application of this test, combined with the explicit statement of the NAIC denying a private cause of action, leads to the conclusion that no private right was intended.

This court therefore concludes, as a matter of law, that North Dakota did not intend to create a private cause of action in N.D.C.C. ch. 26.1-04, its Unfair Insurance Practices Act.

## II. COMMON LAW TORT CLAIM.

The North Dakota Supreme Court has recognized the existence of a duty of good faith and fair dealing owed by an insurance company to its insured in the handling of its insured's claim. *Szarkowski v. Reliance Insurance Co.*, 404 N.W.2d 502, 505–06 (N.D.1987); *Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Insurance Co.*, 279 N.W.2d 638, 643–44 (N.D. 1979); *see also Smith v. American Family Mutual Insurance Co.*, 294 N.W.2d 751 (N.D.1980) (both failure to defend insured and failure to pay may result in tort liability if insurer breaches its covenant to act fairly and in good faith). In *Szarkowski, supra,* the court recognized that a subcontractor who supplied labor and materials on a bonded project was owed a duty by the surety similar to that owed by an insurance company to its insured, *id.* at 505. A subcontractor therefore has a right to bring an independent tort action against the surety for breach of that duty.

While the North Dakota courts have never clearly defined this tort, a number of other jurisdictions have addressed this issue, and are in substantial agreement as to its elements.

The standard for measuring the conduct of an insurer includes two elements: (1) an absence of a reasonable basis for denial of the policy benefits *and* (2) knowledge that the conduct is unreasonable, or reckless disregard for the fact that the conduct is unreasonable. *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 377 (1978); *see also, Travelers Insurance Co. v. Savio,* 706 P.2d 1258, 1272 (Colo.1985); *Payne v. Nationwide Mutual Insurance Co.*, 456 So.2d 34 (Ala.1984); *Matter of Certification of a Question of Law,* 399 N.W.2d 320 (S.D.1987); *Noble v. National American Life Insurance Co.,* 128 Ariz. 188, 624 P.2d 866 (1981). This tort is an intentional one and will only succeed if the facts demonstrate, on the basis of an objective standard, that a reasonable insurer under the circumstances

---

5. In *Cort,* the fourth prong asked: "is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088. This prong is, of course, inapplicable to this case. This court thus adopts the variation to the *Cort* fourth prong as set out in *Seeman v. Liberty Mutual Insurance Co.,* 322 N.W.2d 35, 40 (Iowa 1982).

would not have denied or delayed payment of the claim. *Noble*, 624 P.2d at 868. In applying the test, it is appropriate to determine whether a claim was properly investigated and whether the results were subjected to a reasonable evaluation and review. *Anderson v. Continental*, 271 N.W.2d at 377. An insurance company may challenge claims which are fairly debatable, whether the debate concerns a matter of fact or law, and will only be found liable if it has intentionally denied a claim without a reasonable basis. *Id.*

The Alabama Supreme Court has emphasized the heavy burden borne by a plaintiff alleging bad-faith refusal to pay:

> In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim, and thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury.

*Payne v. Nationwide*, 456 So.2d at 36 (quoting *National Savings Life Insurance Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala. 1982)). Thus, if the defendant can show it had any reasonable basis for the failure to pay the claim or for the delay in settlement, the tort must fail.

Plaintiffs urge this court to adopt the standard used by the California courts, which requires only the absence of a reasonable basis for the defendant's action, but eliminates the "knowledge" requirement. *See, e.g., Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 169 Cal. Rptr. 691, 620 P.2d 141 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980); *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); *McCormick v. Sentinel Life Insurance Co.*, 153 Cal.App.3d 1030, 200 Cal.Rptr. 732 (1984). While this court believes that the cases requiring both unreasonableness and knowledge represent the better-reasoned authority, in this case both rules yield the same result.

 In short, the evidence demonstrates that Reliance had at least two reasonable bases upon which to deny the plaintiffs' claims. First, plaintiffs failed to establish their right to payment through sufficient documentation.[6] Second, plaintiffs' claims were inaccurate and grossly overstated. Moreover, with respect to Conoco's Mercer County project and Cenex's Beulah Spur Road project, Reliance had an additional reasonable basis for denial; namely, that the statute of limitations had run before the claims were even submitted.[7]

## A. Failure to Substantiate Claims.

Reliance asserts that it was obliged to pay only those claims that were adequately documented. It contends that plaintiffs failed in this regard, because they failed to establish that their asphaltic product was actually used in the projects covered by the bonds. Reliance informed plaintiffs that it was essential that they trace their asphalt oil to a specific bonded job, because Scherbenske had purchased asphaltic product

---

6. Conoco's claims contained more detailed documentation than did Cenex's. However, the evidence at trial suggested that Conoco attempted to shore up its inadequate documentation by stamping bills of lading with project numbers just before submitting the claims to Reliance. The stamps bore no relation to the actual deliveries.

7. The evidence showed that the last date that asphaltic product was supplied by Conoco to the Mercer County project was August 31, 1981; therefore, the statute of limitations expired on August 31, 1982, fifteen days before Reliance received the claims and ten days before Conoco

submitted them. Similarly, Cenex last supplied asphaltic product to the Beulah Spur Road project on September 14, 1981, and submitted their claim nine days after the statute of limitations had expired, on September 23, 1982. Plaintiffs urge that the statute should be waived, because Reliance was dilatory in supplying the necessary claim forms. During this time period, however, Reliance was involved in processing a large number of claims generated by the Scherbenske bankruptcy. Under the circumstances, the court finds that a three-week delay in forwarding the claim and affidavit forms was not unreasonable.

from at least three suppliers and was using that product in a number of bonded and unbonded jobs. Thus, Reliance wanted to make certain that it only paid for asphaltic product used in projects covered by its surety bonds.

Plaintiffs counter that they did not have any obligation to demonstrate that their asphaltic product actually went into any particular job. They also contend that Reliance had sufficient records from Scherbenske to reasonably determine which asphaltic product went where.

■ In North Dakota, a contractor must prove that materials and labor it supplied were "used in and about the performance of the [bonded] contract * * *," N.D.C.C. 48–01–01 (1987 Supp.), before recovery on the bond is permitted. Reliance argues that this language requires that the materials actually be used in the project, and that plaintiffs therefore have the obligation to physically trace their asphalt oil to a specific bonded project.

Physical traceability of the product is not required under chapters 48–01 or 48–02 of the North Dakota Century Code. Although no North Dakota decision has expressly discussed this issue, this has been the consistent construction put on similar statutes and the federal Miller Act, 40 U.S. C. § 270b.[8] *See, e.g., United States ex rel. Sunbelt Pipe Corp. v. United States Fidelity and Guaranty Co.,* 785 F.2d 468, 470 (4th Cir.1986); *United States ex rel. Carlson v. Continental Casualty Co.,* 414 F.2d 431, 433 (5th Cir.1969); *United States ex rel. Westinghouse Electric Supply Co. v. Endebrock–White Co.,* 275 F.2d 57, 60 (4th Cir.1960); *United States ex rel. J.P. Byrne & Company, Inc. v. Fire Association of Philadelphia,* 260 F.2d 541, 544 (2nd Cir.1958); *Amoco Oil Co. v. Capitol Indemnity Corp.,* 95 Wis.2d 530, 291 N.W. 2d 883, 888–89 (App.1980); *State ex rel. J.D. Evans Equipment Co. v. Johnson,* 83 S.D. 444, 160 N.W.2d 637, 639–40 (1968).

The Miller Act was designed to replace dependence by materialmen upon state-created liens. *J.W. Bateson Company, Inc. v. United States ex rel. Board of Trustees,* 434 U.S. 586, 589, 98 S.Ct. 873, 875, 55 L.Ed.2d 50 (1978). "Its purpose was remedial and is to be given a liberal construction 'in order * * * to protect those whose labor and materials go into public projects.'" *United States ex rel. Sunbelt Pipe,* 785 F.2d at 470 (quoting *Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944)). This liberal construction requires only that the supplier reasonably believe, in good faith, that the material furnished is to be used in the bonded project in order for him to have the protection of the bond. *United States ex rel. Sunbelt Pipe,* 785 F.2d at 470.

The Wisconsin Court of Appeals has applied federal case law construing the Miller Act to a state public contractor's bond statute. *Amoco Oil Co. v. Capitol Indemnity Corp.,* 95 Wis.2d 530, 291 N.W.2d 883 (App. 1980). The court correctly summarized the federal decisions as not obligating the supplier to demonstrate that its materials were actually incorporated into the bonded work, but rather that it in good faith had reason to believe that materials were intended for the specified bonded work. *Id.* 291 N.W.2d at 889–90.

Good faith under the Miller Act means the supplier had "a reasonable and good faith expectation * * * at the time of delivery that the materials under all circumstances would be substantially used up in the project." *Id.* 291 N.W.2d at 890 (quoting *United States ex rel. Tom P. McDermott, Inc. v. Woods Construction Co.,* 224 F.Supp. 406, 409 (N.D.Okl.1963)).

■ Here, the facts demonstrate that plaintiffs could not have had a good faith belief that their asphaltic product would be used in particular bonded projects. Both Conoco and Cenex entered into open sea-

---

**8.** The Miller Act provides that on federal work, bonds will be issued for the use of persons furnishing labor or materials "in the prosecution of the work provided for in such [bonded] contract * * *." 40 U.S.C. § 270b(a). The North Dakota Supreme Court has held that the federal cases interpreting the Miller Act are persuasive authority for the interpretation of issues similar to those presented here. *See Kuchenski v. Kramer Sheet Metal, Inc.,* 377 N.W.2d 133, 135 (N.D.1985).

sonal contracts to supply asphaltic product to Scherbenske. Plaintiffs were aware that (1) Scherbenske intended to use the asphalt oil for both bonded and unbonded projects, and (2) that there were at least three suppliers of asphalt oil to Scherbenske during this period. There is no evidence that any asphalt oil was designated by the plaintiffs solely for use in a given bonded project.[9] This court concludes that pursuant to North Dakota law, construed in light of the Miller Act cases, plaintiffs have failed to show that they had a good faith belief that their asphaltic product was to be used in particular bonded projects. Accordingly, Reliance was justified in denying the claims.

Plaintiffs' contention that Reliance had sufficient records from Scherbenske to reasonably ascertain the destination of the asphaltic product is unsupported by the record. The evidence at trial revealed that Scherbenske's records were inaccurate and in such disarray as to render them useless. Moreover, as will be discussed later, Reliance did not have a duty to document and substantiate the claims on behalf of plaintiffs.

## III. INFLATED AND INACCURATE CLAIMS.

█ Plaintiffs assert that the claim forms they submitted to Reliance accurately reflected the amounts they were owed, and that Reliance's failure to pay these amounts constituted bad faith. At trial, however, "cut-off sheets"[10] and other evidence was introduced which established that plaintiffs' claims were both grossly inflated and inaccurate as to the last date plaintiffs furnished asphaltic product to the various projects.

Conoco submitted the following claims, which Reliance received on September 14, 1982.

| PROJECT | AMOUNT CLAIMED | LAST DATE ASPHALTIC PRODUCT SUPPLIED |
|---|---|---|
| 1. AHL 1–806(09)140 (the "Mercer County" project) | $175,651.50 | 9/17/81 |
| 2. Valley City District 48 (the "Valley City" project) | $103,378.26 | 10/10/81 |
| 3. F–2–020(05) (001) (the "Stutsman County" project) | $ 36,724.33 | 10/16/81 |
| Total Amount Claimed | $315,754.09 | |

At trial, however, the credible evidence established that the following was accurate:

| PROJECT | AMOUNT ESTABLISHED AT TRIAL | LAST DATE ASPHALTIC PRODUCT SUPPLIED |
|---|---|---|
| 1. Mercer County | $83,844.80 | 8/31/81 (late claim) |
| 2. Valley City | $68,261.81 | 10/21/81 |
| 3. Stutsman County | $30,998.68 | 10/16/81 |
| Total Timely Conoco Claim as Proved at Trial | $99,260.49 | |

Similarly, Reliance received from Cenex the following claim on September 30, 1982.

| PROJECT | AMOUNT CLAIMED | LAST DATE ASPHALTIC PRODUCT SUPPLIED |
|---|---|---|
| 1. City of Dodge | $ 85,417.49 | 10/9/81 |
| 2. Beulah Dist. 14 | $ 42,188.80 | 10/9/81 |
| 3. Beulah Spur Roads | $ 46,419.21 | 10/9/81 |
| Total Amount Claimed | $174,025.50 | |

Again, the evidence at trial revealed the actual claim should have been as follows:

| PROJECT | AMOUNT ESTABLISHED AT TRIAL | LAST DATE ASPHALTIC PRODUCT SUPPLIED |
|---|---|---|
| 1. City of Dodge | $76,903.92 | Unknown |
| 2. Beulah Dist. 14 | $ 8,513.57 | Unknown |
| 3. Beulah Spur Roads | $46,419.21 | 9/14/81[11] |
| Total Timely Cenex Claim as Proved at Trial | $85,417.49 | |

9. Conoco did have a contract for delivery from its Billings, Montana refinery which contained a reference to a project in Mercer County. The evidence indicates, however, that there were both bonded and unbonded jobs in Mercer County.

10. Cut-off sheets are reports maintained by the project engineer which are intended to keep track of which supplier's product, and in what amounts, was actually incorporated into the project. The evidence indicated that Conoco and Cenex may have been aware of the existence of these reports when they submitted their claims, but that Reliance was not.

11. The court recognizes that the claim for the Beulah Spur Roads project was not overstated. However, as discussed, *supra*, this claim was barred by the statute of limitations.

Plaintiffs submitted their claims in the form of sworn affidavits. As discussed earlier, none of these affidavits were accompanied by the documentation that Reliance had reasonably requested. It is these claims that plaintiffs argue Reliance unreasonably refused to pay. It requires no great leap of logic to conclude that Reliance was under no duty to pay these inaccurate and overstated claims.

## IV. DUTY TO INVESTIGATE.

Plaintiffs have asserted throughout that Reliance had a duty to investigate their claims. Plaintiffs propose an overly broad definition of "investigation," however. According to plaintiffs, Reliance had a duty, upon receipt of plaintiffs' claims, to assemble the factual data necessary to prove their claims. The duty to investigate is measured by the standard of reasonableness in any given fact situation. *Paulfrey v. Blue Chip Stamps*, 150 Cal.App.3d 187, 197 Cal.Rptr. 501 (1983). Here, Reliance's duty was not to create plaintiffs' claims, but rather to corroborate the accuracy of properly documented claims. Plaintiffs failed to submit claims that were even minimally substantiated. Reliance repeatedly warned plaintiffs that because there were a number of suppliers, and both bonded and unbonded projects, verifiability was going to be a problem. Given this factual background, plaintiffs were required to provide documentation which clearly specified and distinguished the amount of asphaltic product that they reasonably believed had been used in each bonded project on which they made a claim. Because plaintiffs failed in their duty, Reliance's duty to investigate, or corroborate, never arose. Nevertheless, the facts clearly indicate that Reliance, in an effort to aid plaintiffs, undertook significant independent investigation. Rather than helping to prove plaintiffs' claims, however, this independent investigation only served to increase Reliance's concerns that plaintiffs' claims were inaccurate. Reliance repeatedly communicated these concerns to plaintiffs.

## V. CONCLUSION.

Based upon the foregoing, this court concludes that Reliance had a reasonable basis upon which to deny plaintiffs' claims and that therefore plaintiffs' suit must fail. It is thus not necessary, or even possible, to examine whether Reliance knew that its actions were unreasonable. If the statute of limitations on the contract claims had not run, it may well have been determined that Reliance had an obligation to pay some of the claimed amounts. Its refusal to pay any of the claims under the circumstances, however, does not constitute a tort. This is so because, if a claim is fairly debatable, either as to fact or law, an insurance company may have the dispute resolved in court. *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 377 (1978); *Corwin Chrysler–Plymouth, Inc. v. Westchester Fire Insurance Co.*, 279 N.W.2d 638, 644–45 (N.D.1979), citing with approval *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904–05 (Okl.1977). Here, it was clear that the claims were debatable.

Accordingly, it is ORDERED that judgment be entered in favor of the defendant, Reliance Insurance Company, in each of these consolidated actions. Each party to bear its own costs.