Mendora BILDEN, Appellee,

v.

UNITED EQUITABLE INSURANCE COMPANY, Appellant.

No. 89–5563.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1990.

Decided Dec. 26, 1990.

James Adducci, Chicago, Ill., for appellant.

Jay Fiedler, Grand Forks, N.D., for appellee.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and LARSON,* Senior District Judge.

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

JOHN R. GIBSON, Circuit Judge.

United Equitable Insurance Company appeals from a judgment in favor of Mendora Bilden arising out of United's denial of nursing home benefits under a policy it had issued. Bilden recovered the amounts due under the insurance contract, attorneys' fees, and consequential as well as punitive damages. United argues that it is entitled to judgment notwithstanding the verdict; it also alleges numerous trial errors as grounds for a new trial. While this appeal was pending, an Illinois state court placed United under an Order of Rehabilitation. United now asks that this court stay consideration of the appeal. We deny the stay and affirm the judgment of the district court.[1]

In October 1984, Bilden purchased a policy of nursing home insurance from United Equitable. She was then 76 years old and still able to manage her own affairs. United had promoted its nursing home coverage with a brochure that promised that if her doctor prescribed nursing home care, it would pay benefits.

In December 1985, Bilden was admitted to the Northwood Deaconess Hospital with a diagnosis of Alzheimer's disease. She remained hospitalized for four days. Her physician determined that she should be admitted to a nursing home and ordered that she be placed in an intermediate care unit rather than a unit offering the lower level of care labeled "custodial."

While awaiting a vacancy in the intermediate care unit at the Northwood Deaconess Home, Bilden was placed in the hospital's swing bed unit, where she received intermediate-level care. When a bed opened up in the intermediate care unit, the hospital immediately transferred Bilden to that unit.

United Equitable's policy provided that it would pay benefits if Bilden started receiving daily "nursing care" (as defined in the policy) within thirty days following discharge from a hospitalization of three or more consecutive days for the same or related condition. Benefits for "custodial care" (as defined in the policy) were only payable if the custodial care followed a previous confinement for covered nursing care of at least 20 consecutive days.

Bilden submitted her claim to United. United, after reviewing certain medical records, denied the claim on the grounds that Bilden was receiving custodial rather than intermediate level care. United did not consult Bilden's doctor, her nurses, or its own in-house physician, and did not conduct any further inquiry.

Bilden filed this action, and, after an eight-day trial, the jury awarded her the benefits due under the insurance policy, her attorneys' fees, $71,000 in consequential damages, and $952,000 in punitive damages. In August 1989, the district court denied United's motion for judgment notwithstanding the verdict and also denied the motion for a new trial on the condition that Bilden agree to remit punitive and exemplary damages in excess of $476,000. *Bilden v. United Equitable Ins. Co.*, No. A2–86–189, slip op. at 34 (D.N.D. Aug. 23, 1989). Bilden filed the remittitur, and the court entered an amended judgment on October 20, 1989. This appeal followed.

After this appeal had been fully briefed and set for oral argument on September 10, 1990, the Circuit Court of Cook County, Illinois, placed United under an Order of Rehabilitation and directed the Director of Insurance of the State of Illinois to take possession and control of United's property, business, and affairs pursuant to the Illinois Insurance Code. *People v. Lincolnwood Nat'l Life Ins. Co.*, No. 90CH07724 (Cook Cty. Cir. Aug. 8, 1990); *see* Ill.Rev.Stat. ch. 73, para. 799–857.62 (1989). The rehabilitation order, entered August 8, 1990, provided that all persons having notice of it:

... are hereby prohibited from instituting or further prosecuting any action at law or in equity or any other proceedings against Lincolnwood National and United Equitable, or the Rehabilitator, or from obtaining preferences, judgments, attachments or other like liens or encumbrances, or the making of any levy

---

1. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

against Lincolnwood National and United Equitable, or the property or assets of Lincolnwood National and United Equitable....

Order at 5. The state court also issued a temporary moratorium restraining United and all other persons from paying any claims under the policies until further order of the court. *Id.* at 6.

On September 6, 1990, United's counsel filed a motion for continuance of oral argument and stay of appeal. We requested responses, which the parties electronically transmitted to this panel. On September 10, we heard arguments on the request for a stay and on the merits of the appeal. The parties also addressed the effect of a stay on the supersedeas bond filed by United on February 21, 1990, in the amount of $800,000.[2]

## I.

United first urges this court to abstain from the exercise of federal jurisdiction under the doctrine of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). It argues that the express terms of the Order of Rehabilitation, which prohibit "instituting or further prosecuting" any legal action against United, demand the application of *Burford* abstention. It also argues that the factual setting of this case provides a compelling basis for invoking *Burford.*

■ Addressing first the express language of the Order of Rehabilitation, we conclude that the prohibition on "instituting or further prosecuting" any legal action does not apply to this case. Bilden won her jury verdict 18 months before the Illinois court entered the order. United,

not Bilden, instituted and prosecuted this appeal. When the order was issued, the appellate briefs had already been filed with this court and oral argument was scheduled for the following month. Under these circumstances, we do not interpret the order as barring Bilden from completing the final steps in defending against an appeal brought by United, particularly when United has filed a supersedeas bond with the district court.

United cites no Illinois cases that would shed light on the proper construction of the language in the order. Instead, it relies on cases interpreting the automatic stay provision of the bankruptcy code. *See, e.g., Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60 (6th Cir.1983). We are not persuaded by this authority, as the provision of the bankruptcy code is substantially broader than the language of the rehabilitation order.[3]

■ Aside from the express language of the rehabilitation order, United argues that the factual setting of this case requires the application of *Burford* abstention. In *Burford,* the Supreme Court reinstated a district court's dismissal of a suit seeking review of the reasonableness under Texas law of a state commission's decision that granted Burford the right to drill in an oil field governed by a comprehensive regulatory scheme. 319 U.S. at 334, 63 S.Ct. at 1107. *Burford* abstention applies when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws. *See Nucor Corp. v. Nebraska Pub. Power Dist.,* 891 F.2d 1343, 1348

---

2. The bond recited that judgment was rendered against United on February 17, 1989, and that its enforcement had been stayed pending disposition of United's post-trial motion. The bond provided as follows:

Therefore, the condition of this obligation is that if United Equitable shall prosecute its appeal to effect and shall satisfy the judgement in full, together with costs, interest, and damages for delay if the appeal is finally dismissed or if the judgement is affirmed or shall satisfy in full such judgement as modified together with such costs, interest, and

damages for delay as the Court of Appeals may adjudge and award, this obligation shall be void; otherwise it shall remain in full force and effect.

3. The bankruptcy code stay provision applies to the "commencement or continuation" of judicial proceedings "against the debtor." 11 U.S.C. § 362(a) (1988). The code's stay provision is not limited, as the terms of the rehabilitation order are, to the "institut[ion] or ... prosecut[ion]" of actions.

(8th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 50, 112 L.Ed.2d 26 (1990); *Bob's Home Service, Inc. v. Warren County,* 755 F.2d 625, 628 (8th Cir.1985); *Association for Retarded Citizens v. Olson,* 713 F.2d 1384, 1390–91 (8th Cir.1983); *Moe v. Brookings County,* 659 F.2d 880, 883 (8th Cir. 1981). In such cases, the exercise of federal jurisdiction would disrupt the state's regulatory scheme. *See Moe,* 659 F.2d at 883.

United argues that *Burford* abstention applies here because Illinois has created a complex, court-supervised regulatory scheme to govern insurance, an industry of central importance to the state. United contends that proceeding with this appeal will disrupt rehabilitation and frustrate the state's goal of preserving the assets of the insolvent insurance company. United further argues that it should not be forced to "dissipate its funds by engaging in costly litigation in unconnected suits across the country." Appellant's supplemental brief at 4–5.

■ Bilden correctly points out that abstention is a matter of discretion; federal courts are not required to abstain when the criteria for abstention are met. In *Association for Retarded Citizens,* we recognized that abstention was the exception and not the rule. 713 F.2d at 1390. "The Supreme Court has admonished that abstention should be used only in the extraordinary and narrow circumstances where it would clearly serve an important countervailing interest." *Id.* (citing *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). *See also Colorado River Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

■ United relies primarily on a Third Circuit case, *Lac D'Amiante Du Quebec v. American Home Assurance Co.,* 864 F.2d 1033 (3d Cir.1988), in which a seller of asbestos sought indemnity from an insurance company that had been placed in liqui-

dation proceedings under a New York statute. *Id.* at 1034–36. The Third Circuit held that abstention was appropriate because the case involved unsettled issues of state law and independent federal proceedings would have disrupted a detailed and complex state regulatory scheme. *Id.* at 1045–46. The court noted, however, that its decision did not lay down a "per se rule that district courts must always abstain from an action against an insurance company the instant a state court places the company in liquidation proceedings." *Id.* at 1047. A decision on whether to abstain requires an inquiry into the facts of the specific case. *Id.*

United overlooks a key distinction between *American Home Assurance* and the facts of this case. In *American Home Assurance,* the district court's work was far from complete, and "entailed additional discovery, hearings and briefing." 864 F.2d at 1047. In contrast, Bilden won her jury verdict in February 1989 and the amended judgment was entered in October 1989. When the rehabilitation order was issued in August 1990, the only step remaining that required action by the parties was appellate argument.

United correctly points out that rehabilitation proceedings promote the "equitable adjustment of claims, reduction of administrative costs [and] proper management of the insolvent insurer's liabilities." *American Home Assurance,* 864 F.2d at 1048. We fail to see, however, how a decision on the merits would undercut any of these purposes. A decision on the merits of this appeal would not interfere with the rehabilitator's control of United. An affirmance would bind the rehabilitator and would simply make final a claim for consideration. A reversal would vacate the judgment, either removing a claim against United or giving rise to an unlitigated claim that would have to be submitted in the rehabilitation proceedings. The rehabilitator would not be diverted from other responsibilities to manage this litigation.[4]

---

4. We are aware of the recent case, *Hartford Cas. Ins. Co. v. Borg–Warner Corp.,* 913 F.2d 419 (7th Cir.1990), in which the Seventh Circuit applied

*Burford* abstention because the defendant insurer was undergoing rehabilitation pursuant to the Illinois Insurance Code. *Id.* at 426. *Borg–*

■ United's primary argument is that the denial of a stay would undermine rehabilitation by forcing United to spend money fighting Bilden's claim. That argument does not persuade because, as we stated above, the only step that remained in the appeal process when United applied for the stay was oral argument.

In *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court stated that the decision on whether to abstain does not depend on the application of a "mechanical checklist, but on a careful balancing of important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16, 103 S.Ct. at 937.

In the present case, we conclude that the factors favoring abstention are simply insufficient in weight and number to overcome the strong preference for the exercise of federal jurisdiction. We recognize that Illinois has created a complex regulatory scheme to govern insurance and that these regulations serve important state interests. We conclude, however, that a decision on the merits of this appeal would have virtually no effect on the rehabilitation proceedings. *Cf. Burford*, 319 U.S. at 326–34, 63 S.Ct. at 1103–08 (decision by federal court would have prevented specially designated state court from deciding the propriety under state law of a permit to drill oil).

We also observe that Bilden's primary remedy in seeking to collect on her judgment will, in all likelihood, be against the Insurance Company of North America, the bonding company. United contends that any decision triggering a payment obligation under the bond would force United to engage in continued litigation because it would challenge the propriety of such a payment under the terms of the order.[5]

Under Fed.R.Civ.P. 65.1, Bilden can collect on the bond simply by filing a motion against INA in district court; she is not required to file a separate action. INA may then seek satisfaction from United (which undoubtedly is a claim to be asserted against the rehabilitator), but that should not affect Bilden's right to have her suit finally resolved. We cannot overlook the fact that Bilden purchased this policy in 1984 when she was 76 years old and that she is now 82.

After weighing all of the factors, we conclude that abstention is not warranted in this case, and we deny the application for a stay of appeal.

## II.

■ We now turn to the merits of United's appeal. United contends that the district court erred by failing to find that as a matter of law it did not act in bad faith or with malice, oppression, or fraud in denying Bilden's claim. Because the district court denied Bilden's motion for a directed verdict on the issue of her entitlement to benefits under the contract, United argues that a "fairly debatable" question necessarily existed as to United's obligation under the insurance policy. Thus, United argues, the question of bad faith refusal to pay should not have been submitted to the jury because it had an arguable legal defense to the payment claim. Bilden counters that the standard applied to a motion for directed verdict is not the same as that applied by the jury in reaching its decision.

In its order denying the motion for judgment notwithstanding the verdict, the district court rejected United's argument, stating that the evidence on the issue of policy coverage "weigh[ed] heavily" in the plaintiff's favor, but that it was "properly

---

*Warner* simply does not apply to the facts before us, as it involved a suit filed after the rehabilitation proceedings had started. *Id.* at 421.

**5.** United argues that the express terms of the rehabilitation order prohibit payment to Bilden under the bond. It cites to paragraphs of the order that prohibit the disposing of United's property or the payment of claim obligations.

*See* order, ¶¶ E, G, J. We fail to see how these provisions apply to Bilden's judgment, since payment under the bond would not involve United's property and it similarly would not concern a claim obligation. United's appeal challenges only the award of consequential and punitive damages. United stated at oral argument that the benefits due under the insurance policy have already been paid.

conservative" in nonetheless allowing the contract question to go to the jury. Slip op. at 4–5.

The standard governing a motion for a directed verdict is firmly established. The court may properly enter·a directed verdict or judgment notwithstanding the verdict "only where all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Sunkyong International, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1248 (8th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, "we must: (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn." *Lackawanna Leather Co. v. Martin & Stewart, Ltd.*, 730 F.2d 1197, 1200 (8th Cir.1984). *See also Carper v. State Farm Mutual Ins. Co.*, 758 F.2d 337, 340 (8th Cir.1985); *Dace v. ACF Ind., Inc.*, 722 F.2d 374, 375–76 (8th Cir.1983), *supplemented*, 728 F.2d 976 (8th Cir.1984). Although United raised the issue of whether federal or North Dakota standards should be applied to a motion for a directed verdict, we find it unnecessary to decide this issue as we conclude that the standards are substantially the same. *See Steel v. Downs*, 438 F.2d 310, 311 (8th Cir.1971).

In arguing that the denial of the directed verdict motion established as a matter of law the absence of bad faith on its part, United relies on an Alabama case, *National Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357 (Ala.1982), quoted with approval in *Farmer's Union Central Exchange, Inc. v. Reliance Ins. Co.*, 675 F.Supp. 1534, 1539 (D.N.D.1987).[6] In *Reliance*, which also concerned a claim of bad faith failure to pay under an insurance contract, the district court of North Dakota quoted *Dutton:*

> [F]or a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim, and thus, entitled to recover on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort must fail and should not be submitted to the jury.

*Id.* (quoting *Dutton*, 419 So.2d at 1362). Thus, United argues that because there was conflicting evidence creating a fact issue on the contract claim, the claim of bad faith should not have been submitted to the jury.

■ It is significant that *Reliance*, after quoting *Dutton*, concluded that the bad faith tort must fail "if the defendant can show it had any reasonable basis for the failure to pay the claim or for the delay in settlement." 675 F.Supp. at 1539. We agree with the district court that this standard is essentially the same as that provided to the *Bilden* jury in final instruction no. 6.[7] Slip op. at 4.

---

6. *Reliance Insurance Company* was authored by Judge Frank J. Magill of this court sitting on the district court by designation.

7. Final instruction no. 6 stated in part:
   An insurer cannot reasonably and in good faith deny payments to its insured without some reasonable basis for doing so. It is the duty of an insurer in assessing a claim to do an appropriate investigation so that its conclusions are based upon a knowledge of facts and circumstances. Lack of reasonable diligence and an insurer's refusal to determine the nature and extent of liability evidences bad faith. Where a claim is fairly debatable, however, the insurer is entitled to debate it; whether the debate concerns a matter of fact or law. The fact that you may find Mrs. Bilden entitled to benefits under the policy does not automatically give rise to a claim for bad faith. This is a separate issue and requires a finding that the insurer denied the benefits without proper cause, and that it knew or should have known that it had no reasonable basis for doing so.
   United's Addendum at 37. United also contends that the "knew or should have known" phrase in this instruction incorrectly imposes a negligence standard. The district court properly rejected this argument, observing that the phrase cor-

■ The district court in this case expressly refused to apply the *Dutton* directed verdict test, and we believe that decision to be correct. We also observe that in diversity cases, we give great weight to the district court's interpretation of state law. *Nodaway Valley Bank v. Continental Casualty Co.*, 916 F.2d 1362, 1367 (8th Cir.1990). The problems with *Reliance* are threefold: (1) the *Dutton* test is not the law in North Dakota, as no state court has ever directly addressed this issue, (2) the *Dutton* test did not provide the basis for the decision in *Reliance*, and (3) *Dutton* is not uniformly followed even by the court that issued it. *See Thomas v. Principal Fin. Group*, 566 So.2d 735, 743–50 (Ala. 1990).

The district court observed that the testimony offered by the medical personnel directly involved with Bilden "left the court with virtually no doubt that she was receiving the type of care covered by her policy." Slip op. at 4. The court found the opposing testimony of United's witnesses "unconvincing." *Id.* at 5. Nonetheless, as the district court was required to do, it gave United "the benefit of all reasonable possible inferences" in deciding the directed verdict motion. *Id.* at 5.

The district court's statements highlight the critical flaw in the *Dutton* test. The standards applied to a directed verdict motion require the court to look at the facts in the light most favorable to the non-moving party. The jury, after weighing the evidence and determining the credibility of witnesses, may totally reject the insurer's version of the facts. At that point, the insurer's version has no further relevance. The remaining facts, as found by the jury, may provide a strong basis indeed for a bad faith verdict. In the case before us, the jury found no reasonable basis existed for United's denial of Bilden's claim.

■ United also makes the related arguments that the evidence was insufficient to support (1) the jury's finding that United acted in bad faith, and (2) the jury's finding

rectly imposed a recklessness standard. Slip op. at 5–6 (citing Restatement (Second) of Torts

of malice, fraud or oppression and its resultant award of punitive damages. The district court, in rejecting these arguments, summarized the evidence:

At trial, the plaintiff adduced testimony and other evidence which, if believed, would support factual findings indicating: (1) That the defendant never made direct contact with Mrs. Bilden's doctors or nurses; (2) That United Equitable never gave any indication that it considered communications from the nursing home and health care providers assuring the defendant that Mrs. Bilden was receiving the requisite level of care; (3) That United Equitable did not consult with its own in-house medical personnel before denying the claim; (4) That United Equitable attempted to shift the burden of investigating the claim to Mrs. Bilden and her attorney; (5) That, through its own fault, United Equitable denied the claim before acquiring a complete set of medical records; (6) That in its original correspondence regarding the denial of Mrs. Bilden's claim, United Equitable misstated the terms of the policy and relied on an incorrect basis of denial which it later withdrew and substituted with the reason upon which it ultimately relied; (7) That United Equitable lacked adequate investigative guidelines and failed to follow available guidelines; (8) That United Equitable provided potential nursing home insurance purchasers with a misleading promotional brochure; and (9) That United Equitable's conduct in handling Mrs. Bilden's claim was generally unreasonable and failed to conform to industry standards.

Slip op. at 8–9.

■ In considering a challenge to the sufficiency of the evidence in a diversity case, we apply the standard used by the state in which the district court sits. *Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990). Looking at the evidence in the light most favorable to the verdict, *Construction Assocs. v. Fargo Water Equip.*, 446 N.W.2d 237, 239 (N.D.1989), we are satis-

§ 500 comments f & g (1965)).

fied that substantial evidence supports the jury's verdict and that the district court did not err in denying United's motion for judgment notwithstanding the verdict on the issues of bad faith and liability for punitive damages.[8]

United also argues that the district court's instructions to the jury did not correctly state the applicable law, that the district court abused its discretion in admitting certain evidence offered by Bilden, that the district court erred in preventing United from calling one of Bilden's attorneys as a witness at trial, and that the district court erred in denying United a new trial on the basis of alleged juror misconduct.[9] These issues are fully briefed with citation to numerous authorities. However, we have examined these arguments and find them to be without merit.

For the foregoing reasons, we affirm the judgment of the district court.

8. A portion of United's argument as to sufficiency of the evidence claims a lack of evidentiary support for the consequential damages award of $71,000. While United argues that Bilden's testimony established only $30,000 in out-of-pocket expenses, the district court concluded that the cross-examination of plaintiff's experts regarding their fees established a larger amount. Slip op. at 29. Bilden's daughter testified about travel expenses, copies, telephone calls, miscellaneous expenses, and time spent getting lawyers and traveling. Tr. Vol. II at 88–89. As the district court observed, the jury has considera-

ble discretion in awarding damages. Slip op. at 29. We hold that the district court did not err in concluding that the jury award was not clearly arbitrary, unjust, monstrous or shocking, and that the award was adequately supported by the evidence.

9. United also argues that the award of punitive damages in this case is unconstitutional. As United cites no authority to support this argument, we have little difficulty in declining to address this question.