May 18, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-2046

CARMEN FRAGOSO, a/k/a
CARMEN FRAGOSO DE CONWAY,
Plaintiff, Appellant,

v.

DR. MARIA A. LOPEZ, ET AL.,
Defendants, Appellees.

ERRATA SHEET

The opinion of the Court issued on April 5, 1993 is
corrected as follows:

On page 5, line 16 delete (1976 & Supp. 1989)

On page 7, footnote 5, line 1 change "provision" to
"language"

On page 7, footnote 5, lines 5-6 delete P.R. Laws Ann.
tit. 26, 4021(1) (Supp. 1992).

On page 10, line 7 delete (1976 & Supp. 1989)

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2046

CARMEN FRAGOSO, a/k/a
CARMEN FRAGOSO DE CONWAY,

Plaintiff, Appellant,

v.

DR. MARIA A. LOPEZ, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Cyr, Circuit Judge.

Hector M. Alvarado-Tizol on brief for appellant.

Efren T. Irizarry-Colon and Elisa Figueroa-Baez on brief for

appellees.
Jose Luis Gonzalez Castaner on brief for Juan Antonio

Garcia, Commissioner of Insurance of the Commonwealth of Puerto
Rico.

April 5, 1993

SELYA, Circuit Judge. Plaintiff-appellant Carmen
SELYA, Circuit Judge.

Fragoso de Conway (Fragoso), a citizen of New Jersey, appeals

from an order of the district court granting summary judgment in

favor of certain defendants, including an insurer, Corporacion

Insular de Seguros (CIS), which became insolvent during the

pendency of the appeal. We now conclude (1) that there is no

compelling reason, based on either Erie R.R. Co. v. Tompkins, 304

U.S. 64 (1938), or Burford v. Sun Oil Co., 319 U.S. 315 (1943),

for us to abstain in favor of the liquidator's forum, (2) that

the appeal may proceed in the ordinary course, notwithstanding

CIS's financial plight, and (3) that appellant's arguments on the

merits are unavailing. Consequently, we affirm the judgment

below.

I. BACKGROUND

Dr. Maria A. Lopez first treated appellant's mother,

Milagros Rodriguez de Fragoso, as an outpatient. She diagnosed

Mrs. Rodriguez's condition as transient cerebrovascular ischemic

activity and referred her to Dr. Mojica for a neurological

consultation. On October 13, 1984, Mrs. Rodriguez was admitted

to Doctor's Hospital complaining of numbness in her limbs. Dr.

Lopez performed a cardiology evaluation the next day. On October

18, Mrs. Rodriguez complained of tightness in her chest. Dr.

Lopez sharply reduced the prescribed medication and ordered an

electrocardiogram. Later that evening, Mrs. Rodriguez died of

heart failure.

Plaintiff's cousin, Nilda Fragoso de Rodriguez,

3

suspected medical malpractice. In December 1984, she relayed her

suspicions to appellant. On January 16, 1985, appellant

contacted Attorney Hector Alvarado-Tizol to explore the

possibility of a suit. That same day, appellant hand-delivered a

letter to Doctor's Hospital requesting her mother's medical

records.1 Appellant then returned to New Jersey, leaving

matters in her attorney's hands.

On April 5, 1989 over four full years after her

mother's death appellant invoked diversity jurisdiction, 28

U.S.C. 1332 (1988), and sued Lopez, CIS, and several other

health-care providers in Puerto Rico's federal district court.

(CIS was joined as a defendant pursuant to Puerto Rico's direct

action statute, P.R. Laws Ann. tit. 26, 2003 (1990).)

Following a lengthy period devoted to discovery and pretrial

skirmishing, and marked by settlement of the plaintiff's

differences with other named defendants, Lopez and CIS sought

summary judgment. On July 13, 1992, the district court found the

suit to be barred by Puerto Rico's one-year statute of

limitations governing negligence actions and granted the

defendants' motion. The court thereafter denied Fragoso's motion

for reconsideration. This appeal ensued.2

II. THE REQUEST TO DISMISS THE APPEAL OR STAY PROCEEDINGS

1In her deposition, Fragoso speculated that the letter may
have been delivered during the spring of 1985. She now concedes
that it was delivered on January 16, 1985.

2When summary judgment was entered, Lopez and CIS were the
sole remaining defendants. They are, therefore, the sole
appellees.

4

On December 23, 1992, shortly after this appeal had

been assigned for hearing, appellees filed a motion relating

that, on December 21, 1992, the Puerto Rico Insurance

Commissioner (the Commissioner) had petitioned for the

liquidation of CIS; that a superior court judge, discerning a

$28,000,000 capital insufficiency, appointed the Commissioner as

liquidator of CIS under P.R. Laws Ann. tit. 26, 4004 (1976);

and that the judge had issued an order remitting all claims

against CIS to the claims process demarcated within the

liquidation proceedings.3 Appellees requested that the claim

underlying the instant appeal be so forwarded (and the appeal

dismissed), or, alternatively, that proceedings herein be stayed

pendente lite pursuant to a provision of Puerto Rico's Insurance

Code.4 We granted an interim stay of proceedings and requested

3The original order was soon amended and we refer herein to
the amended version as the Liquidation Order. Paragraph 25 of
the Liquidation Order provides that "any claims against [CIS] or
its insurers under an insurance policy or any[] other kind of
claim, be remitted to the Liquidator . . . . "

4The statute provides in pertinent part:

Judicial proceedings to which [an] insolvent
insurer is an interested party or in which
[it] is bound to represent a party in a court
of competent jurisdiction in Puerto Rico
shall be temporarily suspended for six (6)
months or that period in addition to the six
(6) months granted by a court with
jurisdiction, from the date the insolvency
was determined to permit the [liquidator] an
adequate defense of all causes pending
action.

P.R. Laws Ann. tit. 26, 3818 (Supp. 1989).

5

supplemental briefing from the parties and the Commissioner. The

briefing period having passed, we now consider appellees' and the

Commissioner's requests that we remit the underlying claim to the

liquidator's claims process or, at least, stay proceedings in

this case pending the expiration of the full cooling-off period

stipulated in the Insurance Code.

A. The Erie Doctrine.
A. The Erie Doctrine.

We start with bedrock: a state court cannot enjoin

federal proceedings. See General Atomic Co. v. Felter, 434 U.S.

12, 17 (1977); Donovan v. Dallas, 377 U.S. 408, 413 (1964).

Thus, the prohibitions contained in the Liquidation Order do not

bind this court.

The truism, however, does not end the matter. Relying

on the Rules of Decision Act, see 28 U.S.C. 1652 (1988), and

the familiar Erie doctrine, 304 U.S. at 78, the Commissioner

posits that, in the exercise of diversity jurisdiction, this

court must apply several provisions of Puerto Rico's Insurance

Code collectively requiring dismissal of the claim against CIS

and a six-month stay of the claim against Lopez. See P.R. Laws

Ann. tit. 26, 3818, 3819, 4021, 4032. We disagree.

A federal court sitting in diversity is not required

automatically to follow all particulars of a state court's

process for dispute resolution. Rather, Erie and its progeny

identify certain principles that must be used to cull wheat from

chaff. The "twin aims" animating the Erie doctrine are

"discouragement of forum-shopping and avoidance of inequitable

6

administration of the laws." Hanna v. Plumer, 380 U.S. 460, 468

(1965). These goals are intertwined with the policy that a

federal forum "should conform as near as may be in the absence

of other considerations to state rules even of form and mode"

when those rules "may bear substantially" on the outcome of the

litigation. Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S.

525, 536 (1958); see Guaranty Trust Co. v. York, 326 U.S. 99, 109

(1945); Feinstein v. Massachusetts Gen. Hosp., 643 F.2d 880, 884

(1st Cir. 1981). After giving respectful consideration to the

Commissioner's views, we believe that processing Fragoso's appeal

without regard to Puerto Rico's legal framework for dealing with

insolvent insurers will not offend the Erie rule.

For one thing, it is inconceivable that a defendant's

differential ability, depending upon whether the suit is brought

in a federal or in a commonwealth court, to invoke Puerto Rico's

procedural law anent insolvent insurers after trial and entry of

judgment will influence a litigant's choice of forum. When a

plaintiff selects a forum at the commencement of litigation, she

is unlikely to weigh the possibility that a defendant's insurer

might become insolvent years later, thus influencing the

procedural status of pending appeals. We think, too, that the

uncertainty as to how a Puerto Rico appellate court might apply

the laws in question would stymie attempted forum-shopping.

Although the Commissioner maintains that a commonwealth court

would dismiss the appeal against CIS, the forecasted result is by

no means certain. The Insurance Code directs a six-month stay

7

of all proceedings against the insolvent insurer. See P.R. Laws

Ann. tit. 26, 3818, quoted supra note 4. While the

Commissioner assumes that P.R. Laws Ann. tit. 26, 4021(1)

mandates dismissal of the appeal,5 he neither suggests how to

reconcile this provision with section 3818 nor explains how an

appellate proceeding filed against the insurer before the

issuance of a liquidation order comes within the contemplation of

section 4021. The first Erie consideration, then, does not favor

application of Puerto Rico's Insurance Code provisions to the

instant appeal.

For another thing, declining to apply the

Commonwealth's procedural laws here will not advantage Fragoso as

compared with similarly situated, non-diverse plaintiffs. Cf.

Erie, 304 U.S. at 74-75. A principal function of the Insurance

Code provisions is to allow adequate time for defense preparation

and minimize expense. Here, additional time is wholly

unnecessary; the case was fully briefed prior to the entry of the

Liquidation Order and the merits are straightforward, not

requiring oral argument. See Fed. R. App. P. 34(a) (providing

for eschewal of oral argument where "the facts and legal

arguments are adequately presented in the briefs and record and

the decisional process would not be significantly aided by oral

argument"); 1st Cir. Loc. R. 34.1(a)(2)(iii) (same). Thus,

5The language upon which the Commissioner relies states in
pertinent part that "no action at law or equity shall be brought
against the insurer or liquidator, whether in Puerto Rico or
elsewhere, nor shall any such existing actions be maintained or
further presented after issuance [of a liquidation order]."

8

refusal to remit the action against CIS to the liquidator's forum

or to stay the action against Lopez works no inequity from the

standpoint of either preparation or defense costs.

What is more, Puerto Rico's insolvent insurers'

liquidation provisions do not bear in the slightest on the

substantive outcome of the appeal. These laws provide a

procedure through which claims against the insurer can be

resolved and its assets equitably distributed. They do not

absolve the insurer of any substantive liability. There is no

basis for concluding that this court will reach a result

regarding the underlying merits of Fragoso's appeal that is any

different from the result that a Puerto Rico court would reach,

had it stayed the action, or that the liquidator's forum would

reach, had the action been forwarded there.

Thus, we reject the Commissioner's argument that the

Erie doctrine compels us to dismiss the appeal against CIS and

stay the proceeding against Lopez.

B. Relevancy of Burford Abstention.

In the alternative, the Commissioner urges that we

abstain from hearing the instant appeal under the rule of Burford

v. Sun Oil Co., 319 U.S. 315 (1943). In its most recent

discussion of Burford abstention, see New Orleans Pub. Serv.,

Inc. v. City Council of New Orleans [NOPSI], 491 U.S. 350, 360-64

(1989), the Supreme Court explained that the doctrine counsels

federal courts "sitting in equity" to refrain from interfering

with "proceedings or orders of state administrative agencies"

9

when "timely and adequate state court review is available" and:

(1) when there are 'difficult questions of
state law bearing on policy problems of
substantial public import whose importance
transcends the result in the case then at
bar'; or (2) where the 'exercise of federal
review of the question in a case and in
similar cases would be disruptive of state
efforts to establish a coherent policy with
respect to a matter of substantial public
concern.'

Id. at 361 (quoting Colorado River Water Conservation Dist. v.

United States, 424 U.S. 800, 814 (1976)). In sum, NOPSI cabins

the operation of the Burford doctrine. Post-NOPSI Burford

applies only in narrowly circumscribed situations where deference

to a state's administrative processes for the determination of

complex, policy-laden, state-law issues would serve a significant

local interest and would render federal-court review

inappropriate. Abstention will be "the exception, not the rule."

Id. at 359 (citation and internal quotation marks omitted);

accord County of Allegheny v. Frank Mashuda Co., 360 U.S. 185,

188-89 (1959).

In light of this recent characterization of Burford

abstention, we have three reasons for questioning whether the

doctrine is at all relevant here. In the first place, Burford

commands federal courts "sitting in equity" to abjure

interference with certain state fora. NOPSI, 491 U.S. at 361.

Although enjoining an action in deference to a state proceeding

is an exercise of equitable power, the case at hand is a tort

action. When, as now, the only equitable power a court is asked

to exercise constitutes the very act of abstaining under Burford,

10

we think it is highly questionable whether the court is one

"sitting in equity" to which Burford abstention might be

available.6

In the second place, NOPSI characterizes Burford

abstention as a doctrine shielding "state administrative

agencies" from federal court interference. Id. While Puerto

Rico's tailored revision of the Rehabilitation and Liquidation

Model Act, see P.R. Laws Ann. tit. 26, 4001-4054, sets in

place a "comprehensive framework for the liquidation of insolvent

insurance companies and the resolution of claims against them,"

Gonzalez v. Media Elements, Inc., 946 F.2d 157, 157 (1st Cir.

1991)(per curiam), we question whether the scheme creates a state

administrative agency, as opposed to a judicial structure,7 to

6Prior to NOPSI, the Third Circuit considered whether

Burford abstention is appropriate when a "court is not being

asked to provide equitable relief." Lac D'Amiante Du Quebec v.

American Home Assurance Co., 864 F.2d 1033, 1044 (3d Cir. 1988).

In rejecting the proposition that Burford abstention may turn on

the type of relief sought, the court noted that the Supreme
Court's discussion of Burford abstention in Colorado River

"failed to mention the relevancy of equitable relief." Id. But,

the NOPSI Court specifically described the doctrine as one

available to "a federal court sitting in equity." 491 U.S. at
361. Because we believe that this reference cannot be dismissed
as language languorously loosed, we conclude that the NOPSI

Court's distillation of Burford abstention shines a different

light on this issue. We note, moreover, that the Third Circuit,
in NOPSI's wake, seems similarly inclined. See University of Md.

v. Peat Marwick Main & Co., 923 F.2d 265, 271-72 (3d Cir. 1991).

7The estates of insolvent insurance companies are exempt
from the operation of the federal bankruptcy laws. See 11 U.S.C.

109(b)(2) (1988). Thus, the Puerto Rico Insurance Code
fashions a format for regulating insurers' insolvencies,
rehabilitations, and liquidations, centralizing proceedings into
a single court analogous to a federal bankruptcy court wherein
the Commissioner, as an agent of the court, functions as a

11

which deference under Burford may be paid. While the Insurance

Code regulates insolvent insurers doing business in Puerto Rico,

it is not at all clear that it sets up the functional equivalent

of an administrative agency.

In the third place, Burford abstention is implicated

when the federal courts are asked to interfere with state

processes by reviewing the proceedings or orders of state

administrative agencies, ergo, the requirement of "timely and

adequate state-court review." NOPSI, 491 U.S. at 361. In

Burford, for example, the Supreme Court abstained in the face of

a demand that it review a state railroad commission's order

allocating oil drilling rights. See Burford, 319 U.S. at 316-17;

see also NOPSI, 491 U.S. at 352-53 (discussing abstention in the

context of a challenge to a ratemaking order); Alabama Public

Serv. Comm'n v. Southern Ry. Co., 341 U.S. 341, 342 (1951)

(approving abstention from review of a commission order

prohibiting the discontinuance of certain local train service).

Here, however, we are not being asked to review the actions or

decisions of any state body, be it judicial or administrative.

Thus, the relevancy of Burford abstention is equally questionable

from this standpoint.

C. Applying Burford Abstention.
C. Applying Burford Abstention.

Even assuming, for argument's sake, that Burford

remains relevant to this genre of litigation, the current

situation affords no occasion for abstention. We explain

receiver. See P.R. Laws Ann. tit. 26, 4008 (1976).

12

briefly.

This appeal frames no "difficult question[] of state

law" bearing on significant public policy issues such as would

prompt abstention. NOPSI, 491 U.S. at 361 (quoting Colorado

River, 424 U.S. at 814). The action merely entails the

application of a Puerto Rico statute of limitations, frequently

interpreted in the past, to an idiocratic set of facts. Thus,

the first avenue to Burford abstention is a dead end. And,

moreover, even if difficult or unresolved questions of local law

were present and we descry none the presence of such

questions, without more, would not justify abstention by a

federal court properly sitting in diversity. See Bergeron v.

Estate of Loeb, 777 F.2d 792, 800 (1st Cir. 1985), cert. denied,

475 U.S. 1109 (1986); Construction Aggregates Corp. v. Rivera de

Vicenty, 573 F.2d 86, 91 (1st Cir. 1978).

We turn, then, to the second roadway to Burford

abstention: when federal review will disrupt "state efforts to

establish a coherent policy with respect to a matter of

substantial public concern." NOPSI, 491 U.S. at 361 (quoting

Colorado River, 424 U.S. at 814). Several circuits have

considered whether deciding cases involving insolvent insurance

companies would inflict a sufficiently profound dislocation of a

state's efforts to develop policies of substantial local concern

as to merit abstention, see, e.g., Bilden v. United Equitable

Ins. Co., 921 F.2d 822, 825-27 (8th Cir. 1990), and some have

approved abstention in such circumstances. See Barnhardt Marine

13

Ins., Inc. v. New Eng. Int'l Sur. of Am., Inc., 961 F.2d 529,

531-32 (5th Cir. 1992) (upholding abstention in an action to

recover premiums on canceled policies); Martin Ins. Agency, Inc.

v. Prudential Reinsurance Co., 910 F.2d 249, 254-55 (5th Cir.

1990) (upholding abstention in an action to retrieve reinsurance

proceeds); Lac D'Amiante Du Quebec v. American Home Assurance

Co., 864 F.2d 1033, 1042-49 (3d Cir. 1988) (finding abstention

appropriate and vacating declaratory judgment); Law Enforcement

Ins. Co. v. Corcoran, 807 F.2d 38, 43-44 (2d Cir. 1986) (finding

abstention appropriate in declaratory judgment action), cert.

denied, 481 U.S. 1017 (1987). We, ourselves, heretofore

abstained in an appeal against an insolvent insurance company so

as not to "disrupt Puerto Rico's regulatory system." Media

Elements, 946 F.2d at 157.8

Be that as it may, we do not believe, in general, that

federal court decisionmaking of the kind that exists alongside

state insurance liquidation proceedings so significantly disrupts

state regulatory frameworks to call for abstention. After NOPSI,

Burford abstention is only appropriate where federal

decisionmaking demands "significant familiarity with . . .

distinctively local regulatory facts or policies." NOPSI, 491

U.S. at 364. The doctrine's function is to allow a state to

develop, where necessary, the uniformity needed to achieve

important local interests. Deciding appeals like Fragoso's,

8In Media Elements, no one opposed the request for

abstention. We granted it by summary order, without extensive
analysis.

14

which will have at most an indirect effect on the liquidator's

claims process by potentially giving rise to an additional claim

against the insolvent insurance company, will neither

discombobulate local proceedings nor frustrate the Commonwealth's

regulatory system. Just as the federal courts would not abstain

from deciding legal issues pertaining to a party involved in a

federal bankruptcy proceeding, see, e.g., Picco v. Global Marine

Drilling Co., 900 F.2d 846, 850 (5th Cir. 1990) ("The automatic

stay of the bankruptcy court does not divest all other courts of

jurisdiction to hear every claim that is in any way related to

the bankruptcy proceeding."), we can see no reason for Burford

abstention simply because the judicial bankruptcy proceedings

happen to be before a state court.

We believe, therefore, that the circuit court cases

favoring abstention in insurer insolvency matters are suspect in

light of NOPSI.9 At any rate, they are distinguishable from

9This view is neither original nor exclusive to us. See

Erwin Chemerinsky, Federal Jurisdiction 111-12 (Supp. 1990)

(concluding that NOPSI reins in "several . . . lower court

decisions expansively interpreting Burford abstention"). One

decision specially mentioned by Professor Chemerinsky is Lac

D'Amiante, 864 F.2d 1033 a Third Circuit decision on which

Media Elements relies. See Media Elements, 946 F.2d at 157. We

agree with Professor Chemerinsky that Lac D'Amiante is no longer

good law. Burford, as explicated by the NOPSI Court, involves

the protection of "complex state administrative processes from
undue federal interference, [but] it does not require abstention
whenever there exists such a process, or even in all cases where
there is a potential for conflict with state regulatory law or
policy." NOPSI, 491 U.S. at 362 (citation and internal quotation

marks omitted); see also Chemerinsky, supra, at 112. Indeed, we

read the Third Circuit's post-NOPSI caselaw as signalling the

demise of Lac D'Amiante. See University of Md. v. Peat Marwick

Main & Co., 923 F.2d 265, 272 (3d Cir. 1991); see also Melahn v.

Pennock Ins., Inc., 965 F.2d 1497, 1505 (8th Cir. 1992)

15

the instant case for a number of reasons. First, in nearly all

of those cases, insolvency intervened before the trial court had

entered final judgment. Ordinarily, the more embryonic a case,

the more significant an interference with the state framework for

handling insurance liquidation if the federal tribunal does not

yield. A case such as Fragoso's, where a trial is complete and

solely legal questions suitable for federal appellate resolution

are pending on appeal, is a very weak candidate for abstention.

As we have remarked before, abstention serves "the interests not

only of federalism, but of comity and judicial efficiency."

Medical Malpractice Joint Underwriting Ass'n v. Pfeiffer, 832

F.2d 240, 244 (1st Cir. 1987). Once a federal court has rendered

a final judgment, it is questionable whether abstention is an

efficient or practical move. After all, the liquidator's forum

has no mechanism for reviewing a federal court decision. What

would become of the original judgment is a puzzle. In Bilden,

where the district court rendered its judgment before the

insurance company entered liquidation proceedings, see Bilden,

921 F.2d at 824, the Eighth Circuit held that an appeals court's

decision on the merits would not interfere with the

rehabilitator's control of the insurance company or with the

proper operation of the state's regulatory format. See id. at

826. It is difficult to fault so level-headed an approach.

Second, the concerns animating abstention in Media

(observing "that the Third Circuit has cast doubt on the vitality
of [Lac D'Amiante] as a result of the Supreme Court's more recent

holding in NOPSI") (citing Peat Marwick Main).

16

Elements, the one case cited supra where the Burford issue became

relevant only on appeal and the court nevertheless abstained, do

not apply here. The appeal in Media Elements involved a coverage

issue and, therefore, the court reasoned that abstention would

lessen the risk of inconsistent coverage interpretations. See

Media Elements, 946 F.2d at 157. Fragoso's appeal, however,

requires that we decide a question of law unrelated to coverage.

The case is idiocratic and fact-specific. Passing on this appeal

could not possibly impair uniformity in the interpretation of

CIS's insurance policies, nor could doing so obstruct the

adjudication of claims against CIS in the liquidator's forum.

This is a singularly important difference. See Grimes v. Crown

Life Ins. Co., 857 F.2d 699, 704 (10th Cir. 1988) (stating that

abstention is less desirable where a suit does not require the

court to determine issues which are directly relevant to the

liquidation proceeding or to state policies), cert. denied, 489

U.S. 1096 (1989). In fact, it seems more likely that processing

the appeal, with the result that the district court's judgment

will be affirmed or vacated, would help the Commissioner, for it

is totally unclear how the commonwealth forum would resolve the

appellate matter, or that it could.

The Media Elements panel also observed that compliance

with Puerto Rico's process would reduce the funds which the

insurer would have to spend on litigation. See 946 F.2d at 157.

Resolving this appeal in the ordinary course, however, would not

cost CIS money. The briefs are already filed, and, as previously

17

pointed out, see supra p.7, there is no need for oral argument.

Therefore, the concerns that may have warranted abstention in

Media Elements are not present here. We are, therefore,

comfortable in limiting Media Elements to its own facts.10

We need go no further. NOPSI makes clear that Burford

abstention requires more than a desire to avoid every

inconvenience to, or disruption of, a state's regulatory systems.

Otherwise, abstention would be proper "in any instance where a

matter was within an administrative body's jurisdiction."

Chemerinsky, supra, at 112. That cannot be the rule. It

follows, then, that the mere existence of state procedures, or

even the existence of a complex state apparatus designed to

handle a specific class of problems, does not necessarily justify

abstention. See Melahn v. Pennock Ins., Inc., 965 F.2d 1497,

1505 (8th Cir. 1992). In the final analysis, abstention here

would be inconsistent with the policies underlying the

constitutional grant of diversity jurisdiction and would render a

substantial injustice to those litigants seeking to avail

themselves of their statutory right to a federal forum. See

Allegheny County, 360 U.S. at 188 (observing that abstention "is

an extraordinary and narrow exception to the duty of a District

Court to adjudicate a controversy properly before it"). We,

10We note in passing that, while Media Elements was decided

after NOPSI, the order for abstention neither cited NOPSI nor

acknowledged its suzerainty.

18

therefore, decline the invitation to abstain.11

III. THE ENTRY OF SUMMARY JUDGMENT

The merits of the appeal need not detain us. Summary

judgment is appropriate when "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). The rule's

mechanics are well known. Once the movant demonstrates "an

absence of evidence to support the nonmoving party's case,"

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the nonmovant

must establish the existence of at least one genuine issue of

material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). Where, as here, a motion for summary judgment

has been granted, appellate review is plenary. Hence, we must

evaluate the entire record in the ambiance most flattering to the

summary judgment loser, indulging all reasonable inferences in

her favor, in order to determine the propriety of the order. See

Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991),

cert. denied, 112 S. Ct. 2965 (1992); Griggs-Ryan v. Smith, 904

F.2d 112, 115 (1st Cir. 1990); Mack v. Great Atl. & Pac. Tea Co.,

11Neither the Commissioner nor the appellees have contended
that any idiosyncracy in Puerto Rico's direct action statute,
P.R. Laws Ann. tit. 26, 2003, compels a different result.
Because of this fact, and because of the utter lack of prejudice
to the insurer in the posture of this case, we do not reach the
question of whether a liquidator of an insolvent Puerto Rico
insurance company may have greater rights to insist upon a local
forum when the company is a party to the underlying suit solely
by virtue of the direct action statute.

19

871 F.2d 179, 181 (1st Cir. 1989).

In this diversity action, the substantive law of Puerto

Rico controls. See Erie, 304 U.S. at 78. The statute of

limitations governing negligence actions is "one year . . . from

the time the aggrieved person has knowledge of the injury." P.R.

Laws Ann. tit. 31, 5298 (1990). "Knowledge of the injury,"

under Puerto Rico law, is a term of art. It requires a showing

of both "notice of the injury" and "notice of the person who

caused it." Colon Prieto v. Geigel, 115 D.P.R. 232, 247, 15

Official Translations 313, 330 (1985) (citation omitted).

Limitations defenses may appropriately be resolved at the summary

judgment stage if reasonable minds could not differ about the

legal effect of the properly documented facts of record, taken in

the light most favorable to the nonmovant. See Kali Seafood,

Inc. v. Howe Corp., 887 F.2d 7, 9 (1st Cir. 1989); Mack, 871 F.2d

at 181.

In this case, Fragoso admittedly knew of the injury

her mother's demise and she was informed shortly thereafter of

the possible link between the injury and medical malpractice.

She treated this information as credible and acted upon it,

promptly retaining an attorney to explore that very nexus. The

question in this case, then, is whether appellant's failure to

acquire notice of the person or persons who caused the injury

tolled the limitations period.

We, like other courts, recognize that it is unfair, by

and large, to bar a tort action by the mere passage of time if a

20

plaintiff, exercising due diligence, cannot ascertain the

tortfeasor's identity. Because self-induced ignorance of the

tortfeasor's identity will not interrupt the limitations period,

"[t]he key inquiry under this prong of the `knowledge'

requirement is whether plaintiff knew or `with the degree of

diligence required by law' would have known whom to sue." Kaiser

v. Armstrong World Indus., Inc., 872 F.2d 512, 516 (1st Cir.

1989) (citations omitted). This means that an inquiring court

must ascertain whether ignorance of a fact reflects the

plaintiff's negligence, because, if it does, the limitations

clock will continue to tick. See Santiago Hodge v. Parke Davis &

Co., 833 F.2d 6, 8 (1st Cir. 1987); Colon Prieto, 115 D.P.R. at

244, 15 Official Translations at 327-28. Just as "the

limitations period will be suspended only upon a clear showing of

diligent efforts to discover the cause of the injury or death,"

Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 594 (1st

Cir. 1989), so the law requires a clear showing of diligent

efforts to discover the identity of likely defendants before

suspending the prescriptive period.

Under Puerto Rico law, if a plaintiff sues in tort more

than a year after the injury took place, she bears the devoir of

persuasion with respect to proving that she lacked the knowledge

which would have enabled her to sue within the prescriptive

period. See Kaiser, 872 F.2d at 516; Santiago Hodge, 833 F.2d at

7. Here, appellant, who sued long after the year had passed,

wholly failed to carry her corollary burden. The record reflects

21

an extraordinary delay well over four years between the time

appellant first had reason to believe that someone's negligence

had caused her mother's death and the time she actually took aim

at a particular cadre of defendants.

Moreover, the delay was never credibly explained.

Although appellant argued before the district court that

difficulties in procuring the hospital record caused the delay,

her argument was based on freestanding allegations and was,

therefore, appropriately rejected. We have made it crystal clear

that, in opposing summary judgment, a litigant "may not rest upon

mere allegations in, say, an unverified complaint or lawyer's

brief, but must produce evidence which would be admissible at

trial to make out the requisite issue of material fact." Kelly

v. United States, 924 F.2d 355, 357 (1st Cir. 1991); accord

United States v. One Lot of U.S. Currency ($68,000), 927 F.2d 30,

32 (1st Cir. 1991); Garside v. Osco Drug, Inc., 895 F.2d 46, 50

(1st Cir. 1990); Mack, 871 F.2d at 181.

The only material of evidentiary weight produced in

plaintiff's opposition to the summary judgment motion was a

partial transcript of her deposition a deposition in which she

acknowledged the passage of time but failed to explain it away.

Her counsel's arguments, contained in a memorandum filed with the

district court, did not suffice to bridge this chasm; after all,

proffers that depend not on verified facts but "on arrant

speculation, optimistic surmise, or farfetched inference" cannot

forestall summary judgment. Kelly, 924 F.2d at 357. We have

22

warned, time and again, that "the decision to sit idly by and

allow the summary judgment proponent to configure the record is

likely to prove fraught with consequence." Id. at 358. So it is

here. Because the record evinced no credible basis for

concluding anything other than that the prescriptive period

expired due to some unexplained cause (not excluding

appellant's inattentiveness), summary judgment was appropriately

entered.

IV. THE REFUSAL TO RETRACT

In a last-ditch effort to salvage her case, appellant

assigns error to the lower court's denial of her motion for

reconsideration. In this instance, the motion for

reconsideration added one new ingredient to the mix: a sworn

statement from appellant's cousin, Nilda Fragoso de Rodriguez.

The affidavit relates that Nilda accompanied appellant to the

lawyer's office in December, 1984; that the lawyer wanted the

decedent's medical records so that he could have them scrutinized

by an expert; that Nilda requested the records from Doctor's

Hospital in January of 1985; that she returned twice more to the

hospital (on unspecified dates) before receiving the record on

her third trip (the date of which is also unspecified); that she

took the record to the attorney; that, later, on a date again

unspecified, she returned to the hospital to get "a certified

copy of the full record"; that, after a few telephone inquires on

unspecified dates, she received the complete record; and that she

delivered it to the lawyer the same day (date unspecified).

23

Bereft, as it is, of even approximate dates, this affidavit is

manifestly insufficient to turn the tide. It shows, at most,

desultory efforts inadequate to demonstrate diligence in

obtaining the records; and, moreover, it wholly fails to suggest

any good reason why appellant and her attorney sat complacently

by for so long a period of time.

Where, as here, a motion for summary judgment has been

granted, "the district court has substantial discretion in

deciding whether to reopen the proceedings in order to allow the

unsuccessful party to introduce new material or argue a new

theory." Mackin v. City of Boston, 969 F.2d 1273, 1279 (1st Cir.

1992), cert. denied, 113 S. Ct. 1043 (1993); accord Mariani-Giron

v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir. 1991); United States v.

5 Bell Rock Road, 896 F.2d 605, 611 (1st Cir. 1990); Appeal of

Sun Pipe Line Co., 831 F.2d 22, 25 (1st Cir. 1987), cert. denied,

486 U.S. 1055 (1988). The trial court's decision on such a

motion will be overturned only if the appellant convinces us that

the court committed a clear abuse of discretion. See Mackin, 969

F.2d at 1279; Sun Pipe Line, 831 F.2d at 25. Given three major

inadequacies in the motion to reconsider appellant offered no

excuse for the belated production of her cousin's affidavit; the

affidavit itself raised more questions than it answered; and

neither appellant nor her attorney, obviously the key players in

the drama, submitted affidavits explaining what had transpired or

why they had allowed it to transpire the district court was

justified in refusing to exercise its discretion to extricate

24

appellant from her self-dug hole.

The provisional stay is dissolved, the appellees'

motion for dismissal of the appeal, a statutory stay, or related

relief is denied, and the judgment below is affirmed. Costs to

appellees.

25